**TRIANGLE IMPROVEMENT COUNCIL et al., Plaintiffs-Appellants,**

v.

**William S. RITCHIE, Commissioner, State Road Commission of the State of West Virginia, et al., Defendants-Appellees.**

**No. 14033.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1970.

Decided May 14, 1970.

Rehearing Denied and Rehearing En Banc Denied July 14, 1970.

Michael Davidson, New York City (Jack Greenberg, New York City, John Boettner, Jr., A. Andrew MacQueen, III, Charleston, W.Va., Thomas J. O'Sullivan, New Haven, Conn., Peter M. Collins, Burlington, Vt., and Steve Young, New York City, on the brief), for appellants.

Walter H. Fleischer, Atty., Department of Justice (William D. Ruckelshaus, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Department of Justice, Wade H. Ballard, U. S. Atty., L. Alvin Hunt, Stanley E. Preiser and Preiser, Greene, Hunt & Wilson, Charleston, W. Va., on the brief), for appellees.

Before BRYAN and CRAVEN, Circuit Judges, and JONES, District Judge.

PER CURIAM:

We affirm on the opinion of the district court, 314 F.Supp. 20 (S.D.W.Va. July 2, 1969).

Affirmed.

## ORDER DENYING MOTION FOR RECONSIDERATION

PER CURIAM.

Upon consideration of the motion filed by the plaintiffs-appellants, Triangle Improvement Council, et al., for reconsideration of the opinion of this court announced on May 14, 1970, affirming the decision of the District Court, it is

Ordered that the said motion be, and it is hereby, denied.

## ORDER DENYING REHEARING IN BANC

SOBELOFF, Circuit Judge, dissenting from the denial of a rehearing in banc: WINTER, Circuit Judge, joins in this opinion:

In light of the cryptic treatment given this appeal by the panel which decided it, I feel constrained briefly to set forth the issue, the panel's rationale, and the reasons for my disagreement.

The appellants are residents of Charleston, West Virginia's black ghetto, known as the Triangle, who will shortly be uprooted from their homes to make way for the construction of an interstate highway. They have now abandoned their futile efforts to halt or divert the road. Their sole objective at this point is to assure that when displaced they will be able to obtain adequate replacement housing, as guaranteed by federal law.

The plaintiffs' concern arises from a critical housing situation in Charleston. According to one study they cite, standard housing is only sparsely available for poor people generally, and hardly at all for poor blacks.[1] The problem of an ever shrinking housing supply has been grossly aggravated by a series of public projects, including highway construction, which have extensively eliminated housing facilities and continue to do so.

Despite informal promises made to them by state and federal officials that adequate housing will be available, the appellants are seriously apprehensive that when the time comes for them to move there will be nowhere to go except to substandard, inferior quarters. It is for this reason that they demand that the state authorities comply fully with the federal requirement to submit a detailed,

1. Additionally, three memoranda of the federal right-of-way officer support this contention.

comprehensive relocation plan. Such a study, they say, will demonstrate that contrary to the representations of defendants, there are gross deficiencies in the housing potentially available to displacees. If the survey does support their claims there will be time before displacement to take steps, in conformity with federal law, to alleviate the problem.

The defendants assert that adequate replacement housing will exist, yet they reject the necessity for an analysis that would definitely test, either to contradict or corroborate, their assertion.[2] The sole issue on this appeal is whether federal law requires submission of a detailed relocation plan as insisted by appellants.

In 1968 Congress recognized the predicament of poor persons whose homes are destroyed to make way for a highway, with no provision of alternative accommodations. Thus the Congress passed extensive amendments to the Federal-Aid Highway Act to provide for the "prompt and equitable relocation and reestablishment of persons" displaced by federal highway programs. 23 U.S.C. § 501. Theretofore no duty was owed to displaced persons save to furnish them information. 23 U.S.C. § 133. The cold administrative indifference to the plight of those left without roofs over their heads mounted to the level of a national scandal. Under the new provisions, enacted to alleviate the inequity the Secretary may not approve a highway project unless he receives "satisfactory assurances" that, inter alia, prior to displacement, there will be available in adequate number and within the financial means of displaced persons "decent, safe and sanitary dwellings." 23 U.S.C. § 502.

What constitutes "satisfactory assurances" has been defined by regulation. They may not be merely vague or general promises. Instead, the statute and the regulations adopted pursuant thereto make mandatory a plan of relocation which describes the methods and procedures to be used and specifies detailed data concerning the replacement housing to be provided. There must also be a report probing relocation problems, analyzing other public programs affecting the availability of housing, furnishing information on concurrent displacement caused by other agencies, estimating the time required to accomplish the plan, and demonstrating that the plan is adequate "to carry out a timely, orderly and humane relocation program." IM–80–1–68–(7) (b).[3] It is this accumulation of

---

2. In response to this litigation the state authorities prepared a purported "relocation plan." This has not been reviewed by federal officials and there is no contention that it meets the federal standards for a sufficient plan. According to the appellants much of the proposed replacement housing referred to in the plan is either far above the financial eligibility of the displacees, not available to black people, or already occupied. Furthermore, the plan, it is said, gives no consideration to the competing demands of displacees from outside the Triangle area. Whether or not appellants' allegations are true, it is clear that any lacunae that exist in this "plan" would be filled by the federally mandated one. See note 3, infra.

Instead of furnishing a comprehensive plan, the defendants now rely on the District Judge's finding that "adequate relocation housing, on an open racial basis, will be available in the Charleston area for an orderly relocation of the displacees from the interstate highway corridor."

The plaintiffs dispute the finding and, moreover, point out that it is not up to us, nor was it for the District Court, to weigh the validity of the state's relocation program. Under the 1968 amendments, which the plaintiffs insist are applicable, there is a precise, effective administrative procedure for evaluation of the adequacy of proposed replacement housing.

If the 1968 amendments are indeed applicable, this case would seem, in light of the defendants' conduct during this lawsuit, note 6, infra, to be a particularly appropriate one in which to insist upon strict compliance with the letter of the law.

3. IM–80–1–68–(7) (b) provides:
The State highway department, prior to proceeding with right-of-way negotiations and/or construction shall furnish the following information for review and approval by the division engineer:
(1) The methods and procedures by which the needs of every individual to be displaced will be evaluated and correlated

proposal and fact that enables federal officials to review the plan to determine whether

> [t]he State's relocation plan is realistic and is adequate to provide orderly, timely, and efficient relocation of displaced individuals and families to decent, safe, and sanitary housing with minimum hardship on those affected. IM–80–1–68–(5) (a).

Approval by the Secretary is necessary at two junctures of a project; first before right-of-way acquisition and then again before actual construction. 23 U.S.C. § 106; Policy and Procedure Memorandum 21–5. Rights-of-way for the projects involved in this case were authorized in 1966 and 1967. However, there has yet to be final approval of the construction phase. Thus it would seem that the above described requirement of a thorough plan must be fulfilled before construction in the Triangle may proceed.

The defendants, however, argued that the 1968 amendments do not apply to any project in which any approval of the Secretary (either for acquisition or for construction) was obtained prior to 1968. Thus, since acquisition authorizations were obtained in 1966 and 1967, the argument ran, the new relocation provisions are inapplicable here. Defendants based their interpretation on a Department of Transportation regulation providing that

> assurances are not required where authorization to acquire right-of-way or to commence construction has been given prior to the issuance of this

memorandum. [September 1968]. IM–80–1–68–(5) (b).

The plaintiffs objected that this reading of the statute, resulting in the disregard of the 1968 relocation amendments in respect to 1970 displacements, is inconsistent with the plain statutory language, the legislative history, as well as other Department of Transportation regulations.

The District Judge accepted the defendants' view. In doing so he relied on Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), which held that courts should show "great deference to the interpretation given the statute by the officers or agency charged with its administration" and should sustain those interpretations unless unreasonable. Accordingly, he found that "the agency's determination had a rational basis and should not be disturbed." This holding a panel of this court embraced in its one-sentence affirmance "on the opinion of the District Court."

However, subsequent to the opinion of the District Court the federal authorities issued new guidelines. These declarations, a policy directive of the Secretary of Transportation [4] and an implementing memorandum of the Federal Highway Administration,[5] reveal that federal regulations no longer subscribe to the view of limited applicability of the 1968 amendments. Rather, the new policy makes clear that, as interpreted by the Department of Transportation, the amendments pertain to all approvals of construction, even when projects have been previously authorized. According-

---

with available decent, safe, and sanitary housing at reasonable rents or prices and readily accessible to his place of employment.

(2) The method and procedure by which the State will assure an inventory of currently available comparable housing which is decent, safe, and sanitary, including type of building, state of repair, number of rooms, needs of the person or family being displaced (based on standards outlined in paragraph 13i), type of neighborhood, proximity of public transportation and commercial shopping areas,

and distance to any pertinent social institutions, such as church, community facilities, etc. The use of maps, plats, charts, etc., would be useful at this stage.

4. Memorandum of Secretary of Department of Transportation: Implementation of Replacement Housing Policy, January 15, 1970.

5. Federal Highway Administration Circular Memorandum: Relocation Assistance—Availability of Replacement Housing, March 27, 1970.

ly, since an appellate court "must apply the law in effect at the time it renders its decision," Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969),[6] then precisely for the reasons the District Court (and then the panel) accepted the now discarded interpretation, this court is obliged to adopt the more recent view.

It remains to inquire why this court has not acted on these developments. The initial panel opinion, adopting the reasoning of the District Court, logically cannot serve to answer this question because the new administrative regulations came after the opinion below. The opinionless order denying a rehearing provides no further elucidation. It is therefore necessary to set out the panel's view as I infer it to be. There is, of course, no dispute within the court that the appellants' position on the applicability of the 1968 amendments has now become the law and that comprehensive relocation plans are required before construction can be approved. Rather, my brethren seem to think that the new regulation, expressly recognizing the plaintiffs' rights under the 1968 amendments, has somehow eliminated the need for relief. Their position apparently is that there is no reason to suppose that the new policy will not be applied to the Triangle and, accordingly, appellants' claim is thus mooted, at least for the time being.

I cannot subscribe to this expectation. The question is anything but moot. The defendants have consistently taken the position, both before and during the litigation, that the state authorities need not submit and the federal officials need not review a formal relocation plan. They have continued to press this contention on appeal in spite of the policy change of which they were aware. Moreover, they have been less than forthright in the course of this litigation. They resisted, without justification, producing the very memorandum of the Secretary that announced the new position and did not supply it until ordered to do so by the court. Under these circumstances I cannot think that court-ordered relief would be superfluous. On the contrary, the defendants' refusal to accord the plaintiffs their rights cries out for redress.

Nor do I perceive any justification for the cavalier treatment accorded the appeal and the petition for rehearing. Even if injunctive relief is not appropriate this court should not, by its silence, permit any possible implication that the obligations on the defendants have not been altered since the District Court's order. As I understand it, the affirmance is based on confidence that the defendants will perform their duty, not that they have none to fulfill. When the court acknowledges the duty but without explanation does nothing to enforce it, the decision will be read by some as a holding that there is no duty. At the very least the court should have explicated its rationale to underscore the obligation and prevent misreading. Its failure to do so constitutes serious error.

---

6. It was on this theory that a separate panel of this court, consisting of Judges Haynsworth, Boreman and Sobeloff, or-

dered the federal defendants, who had resisted, to produce the Memorandum of the Secretary.