STOULIG, Judge.
The property of defendants, Mr. and Mrs. Ricardo Miron, was expropriated by the Parish of Jefferson for the Earhart Boulevard construction project at a compromise-stipulated market value of $23,065. This litigation ensued after the Parish rejected defendants’ claim that they were entitled to two additional items of damage from the expropriating authority, namely:
1. Monthly disability payments of $108.39 from the date of conveyance of title to January 26, 1977, which defendant had been receiving and is entitled to receive under a mortgage insurance contract ; and
2. Relocation assistance authorized by 42 U.S.C. 4201 (as amended in 1971).
Defendant has appealed a judgment rejecting both claims.
This matter was adjudicated in the trial court on written stipulations of fact. With respect to the first claim for damages, it appears that Mr. and Mrs. Miron bought the expropriated property in 1965, subject to a $16,350 mortgage.
On July 1, 1966, the Old Republic Life Insurance Company of Chicago, Illinois, issued a form of mortgage insurance in favor of and payable to the mortgage holder. The policy, inter alia, provided defendant Miron would be paid $108.39 monthly for a period not to exceed 60 months in the event he became disabled. In December 1971 defendant Ricardo Miron became totally disabled and began receiving the monthly payments which were to continue through January 26, 1977. One of the occurrences that would terminate disability payments before this time was prepayment of the mortgage. On October 6, 1972, judgment was rendered transferring ownership from the Mirons to the Parish, and during that month, the balance of $14,467.-37 due on the mortgage was paid to the holder in order to vest an unencumbered title to the property in the expropriating authority.
In written reasons for judgment, the trial judge indicated he rejected the claim for future disability payments because of its speculative nature. He pointed out the death of Mr. Miron, should it occur before January 1977, would also terminate the insurer’s obligation to pay disability benefits.
The rule of law applicable to this aspect of defendants’ claim, is not disputed. Simply stated it is that the property owner is entitled to recover actual damages directly attributable to the expropriation. Anticipated, remote or speculative damages are not recoverable. See Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1956). As we view the claim for disability benefits, we find nothing speculative about it. In December 1971, Ricardo Miron became disabled and on this happening, his right to 60 monthly payments became vested. This definition of a vested right is found in Tennant v. Russell, 214 La. 1046, 39 So.2d 726 (1949), at page 728:
“A right is vested when ‘the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. *67 The right must be absolute, complete, and unconditional, independent of a contingency, and a mere expectancy of future benefits * * *
Had defendant Ricardo Miron made this claim as a policyholder who had not suffered the disability that activated the payment provision in his favor, then we would agree this was not a compensable item of damage. But this is not the case. Further, we will not categorize the future disability benefits as speculative simply because it is possible for Miron to die prior to January 1977. If the potential death of any claimant were a valid reason for disallowing future payments, it would follow no court could, as an element of damages, make awards for the loss of future income or other continuing damages. The uncertainty of life does not render noncompensable as being speculative or conjectural an actual loss or damage which will continue to accrue in the future.
Having reached this conclusion, we next consider the amount of damages to which defendants are entitled. The purpose of this insurance is to assure both mortgagor and mortgagee that monthly payments will continue in the event the mortgagor becomes disabled. Part of these payments are applied to reduce principal, part to satisfy the interest, and the balance is applied to current tax and insurance expenses.
With this in mind, we note the defendants’ out-of-pocket loss caused by the premature termination of monthly benefits was only that portion of the monthly payment that would have been applied by the mortgage company to reduce the principal balance. The funds apportioned to interest, taxes and insurance are maintenance items or expenses from which the defendants have been relieved as a result of the taking. Thus we think defendants are entitled to the difference due on principal between October 1972 and January 1977. Or, to put it another way, they should recover the projected increment in their equity in this property between the date of the taking and the date of the termination of benefits had they not been untimely discontinued by the expropriation.
As to defendants’ claim for relocation assistance, we affirm its dismissal. Defendants would avail themselves of the provisions of 42 U.S.C. § 4201, as amended, requiring state and local agencies, undertaking public projects with federal financial assistance, to render financial assistance to displaced persons whose property is expropriated. Specifically, this is designated as relocation assistance. Included in the definition of federal financial assistance is a loan of federal funds. In the instant case, it was stipulated that no monies had been received by the Parish or State from any federal agency with the exception of a $496,000 loan made by the Housing and Home Finance Agency in 1965 for making a feasibility study of the proposed public improvement. This loan must be repaid out of the proceeds of the subsequently approved Parish bond issue.
It is defendants’ contention that even though the federal funds were loaned six years before the act was passed, nonetheless, the defendants were not required to relocate until after its enactment. They take the position the date of relocating governs.
In rejecting this contention, the trial court relied on Triangle Improvement Council v. Ritchie, 314 F.Supp. 20 (D.C.S. D.W.Va., 1969), aff’d 4 Cir., 429 F.2d 423, cert. den. 402 U.S. 497, 91 S.Ct. 1650, 29 L.Ed.2d 61. In that case the court was called upon to interpret certain provisions of the 1968 Highway Act, including whether certain displaced persons in West Virginia were entitled to relocation assistance. An administrative decision which the federal district court reviewed held the act did not apply to displaced persons whose property was expropriated for projects for which final authorization was given prior to passage of the act. As we interpret the case, the court simply held it would not disturb an agency finding based on rational *68 grounds and m substantial compliance with the purposes of the act. Rather than rely on Triangle, we simply hold the 1971 Act cannot impose a new condition on a federal loan granted in 1965. If we were to order the Parish to pay for relocation assistance under the 1971 Act, we would in effect be modifying the 1965 loan contract. In so doing, we would be giving the act an unconstitutional interpretation in that LSA-Const. Art. 4, § 15 states an ex-post facto law may not impair the obligation of a contract.
For the reasons assigned, the judgment appealed from is reversed insofar as it disallows defendants’ claim for damages flowing from the termination of disability payments and this matter is remanded to permit defendants to adduce evidence to establish the amount by which the principal balance of the mortgage would have been reduced had these payments continued to January 1977 and to permit the trial judge to render judgment consistent with the view expressed herein; in all other respects, the judgment is affirmed. Plaintiff is to pay the costs of this appeal.
Reversed in part; affirmed in part; and remanded.