**WILDLIFE PRESERVES, INC.,**
Appellant, et al.

v.

**John A. VOLPE, Secretary U. S. Department of Transportation.**

**No. 19222.**

United States Court of Appeals,
Third Circuit.

Argued April 6, 1971.

Decided June 7, 1971.

Edwin C. Landis, Jr., Meyner & Wiley, Newark, N. J. (Eileen M. Cornell, Morristown, N. J., on the brief), for Wildlife Preserves, Inc.

Raymond W. Young, Asst. U. S. Atty., Newark, N. J. (Frederick B. Lacey, U. S. Atty., Newark, N. J., on the brief), for John A. Volpe, Secretary of Transportation.

Aaron Dines, Morristown, N. J. (Donald G. Collester, Jr., Morristown, N. J., on the brief), for County of Morris, Thomas Koclas, Norman Griffiths, John Korn, Henry Sperling and John Vreeland.

David A. Biederman, Deputy Atty. Gen., Trenton, N. J. (George F. Kugler, Jr., Atty. Gen., Stephen Skillman, Asst. Atty. Gen., Trenton, N. J., on the brief), for John C. Kohl.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Plaintiff, a non-profit New Jersey corporation dedicated to the preservation of wildlife and waterfowl areas, appeals from an order of the district court granting the defendants' motion for summary judgment. The complaint seeks temporary and permanent injunctive relief against the Secretary of the United States Department of Transportation, the Commissioner of the New Jersey Department of Transportation and other State officials to bar further action with respect to Federal-Aid Highway Project No. I–280–6 (28)–47. That project involves the erection of part of Interstate Highway No. 280, an east-west connector road from Newark to a westerly terminus at Interstate Highway No. 80. Project No. I–280–6 includes a part of the route which traverses Troy Meadows, a fresh water marsh in the Passaic River drainage basin. The plaintiff owns land in the marsh, part of which was condemned for the project in proceedings in the New Jersey courts. The State also owns land in the marsh, acquired under its Green Acres Program for preservation as a wildlife refuge and recreational area. N.J.Rev.Stat. § 13:8A–1 et seq. The project highway in issue does not traverse the State owned wildlife area. The complaint alleges that completion of the project as proposed will do irreparable harm to the unique and irreplaceable ecology of the Troy Meadow. It charges that disbursement of federal funds for the project is illegal: (1) because neither the Secretary of Transportation nor the State of New Jersey have held the public hearings required by the Federal-Aid Highways Act, 23 U.S.C. § 101 (1964) et seq., as amended by the Federal-Aid Highways Act of 1968, 23 U.S.C. § 101 (Supp. V, 1970) et seq., and set forth in Policy and Procedure Memorandum 20–8 issued by the federal Bureau of Public Roads, 23 C.F.R., Chapter 1, appendix A; and (2) because the Secretary has not made the findings required by § 4(f) of the Department of Transportation Act of 1966, as amended by § 18(b) of the Federal-Aid Highways Act of 1968, 49 U.S.C. § 1653(f) (Supp. V, 1970) and 23 U.S.C. § 138 (Supp. V, 1970). See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136. (1971).

Plaintiff moved in the district court for a preliminary injunction. The court took testimony on this application, and on January 19, 1970, declined to issue a preliminary injunction on the ground that the plaintiff's likelihood of ultimate success was slight and the public interest in completion of the project great. At that time the contract for construction had already been awarded (June 25, 1969) and construction had commenced (August 4, 1969). On January 24, 1970, the federal defendants moved for judgment on the pleadings or alternatively for summary judgment, relying on the affidavits submitted and the testimony taken at the hearing on the motion for a preliminary injunction. The plaintiff filed no opposing affidavits, but contended that the matters already before the court showed the existence of a genuine fact issue. That fact issue, plaintiff contends, is the date on which the project received design approval.

The date of design approval is critical to the application of the statutes and the Policy and Procedure Memorandum upon which plaintiffs rely.

Section 4(f) of the Department of Transportation Act of 1966, which as amended is found in 49 U.S.C. § 1653(f) (Supp. V, 1970) as well as 23 U.S.C. § 138 (Supp. V, 1970) originally provided:

"(f) The Secretary shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After the effective date of this Act,

the Secretary shall not approve any program or project which requires the use of any land from a public park, recreation area, wildlife and waterfowl refuge or historic site unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use." 49 U.S.C. § 1653(f) (Supp. III, 1968).

That statute was amended by §§ 18(a) and (b) of the Federal-Aid Highway Act of 1968 in several respects. First, a declaration of policy was added:

"It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreational lands, wildlife and waterfowl refuges, and historic sites."

Second, the duty of the Secretary with respect to parks, recreational areas, wildlife or waterfowl refuges was restricted to projects which required the use of publicly owned land in such sites. The statute was also narrowed to include only sites of national, state or local significance.

The effective date of the 1966 Department of Transportation Act is April 1, 1967. Exec.Order No. 11340, 3 C.F.R. 267 (Supp.1967). The case was argued to this court on the assumption that the effective dates of 23 U.S.C. § 138 (Supp. V, 1970) and 49 U.S.C. § 1653(f) (Supp. V, 1970) were August 23, 1968. That date appears in § 1653(f) because it is the effective date of the Federal-Aid Highway Act of 1968. Section 138 refers specifically to the effective date of that act as its effective date. Actually, however, the Secretary had a broader duty from April 1, 1967, to August 23, 1968, than thereafter, and we will assume the earlier date for purposes of our decision. From April 1, 1967, approval of a project requiring use of a wildlife preserve required the findings which are specified in Citizens to Preserve Overton Park, Inc. v. Volpe, *supra.*

The public hearing statute, 23 U.S.C. § 128 (Supp. V, 1970), had a much earlier genesis. It appears at least as early as § 13 of the Federal-Aid Highway Act of 1950, Act of Sept. 7, 1950, Ch. 912, § 13, 64 Stat. 791. It was broadened in § 116(c) of the Federal-Aid Highway Act of 1956, Act of June 29, 1956, Ch. 462, § 116(c), 70 Stat. 385 and was included as § 128 in the Recodification of Title 23 enacted as Pub.L. No. 85-767, Aug. 27, 1958, 72 Stat. 902. Until 1968, however, State or local officials were required to certify to the Secretary only that a hearing had been held to afford the public an opportunity to voice objections about the economic impact of the project. The Federal-Aid Highway Act of 1968 amended § 128 to require that the State or local officials certify that hearings have been held, and that the submitting department "has considered the economic and social effects of such a location, *its impact on the environment,* and its consistency with the goals and objectives of such urban planning as has been promulgated by the community." 23 U.S.C. § 128 (Supp. V, 1970) (emphasis supplied). As pointed out above, the effective date of the Federal-Aid Highway Act of 1968 is August 23, 1968.

It is undisputed that the New Jersey Department of Transportation did not for the project in question furnish to the Secretary the certificate as to environmental effects required since August 23, 1968, by 28 U.S.C. § 128 (Supp. V, 1970). It is undisputed that the Secretary did not, with respect to the project, make the findings required since April 1, 1967, by Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f) (Supp. III, 1968), as amended 49 U.S.C. § 1653(f) (Supp. V, 1970), for approval of any project in a wildlife preserve. The defendants contend that neither step was required because the project had been approved long prior to either critical date.

The Department of Transportation has construed 23 U.S.C. § 128 (Supp. V, 1970) in Policy and Procedure Memorandum 20–8 issued by the Bureau of Public Roads. 23 C.F.R., Chapter 1, appendix A. That memorandum sets out specific requirements for state highway department hearings. It provides for two hearings, a corridor public hearing and a highway design public hearing. It defines a highway design public hearing as one that:

"(1) is held after the route location has been approved, but before the State Highway Department is committed to a specific design proposal.

\* \* \* \* \*

(3) Provides a public forum that affords full opportunity for presenting views on major highway design features, including the social, economic, environmental, and other effects of alternate designs."

Social, economic and environmental effects are defined to include effects on:

"(5) Recreation and parks.

\* \* \* \* \*

(7) Aesthetics.

\* \* \* \* \*

(13) Conservation (including erosion, sedementation, wildlife and general ecology of the area).

(14) Natural and historical landmarks."

The Policy and Procedure Memorandum was issued on January 17, 1969. It is undisputed that the State Department of Transportation has not held a hearing meeting the specific standards of the Policy and Procedure Memorandum. The defendants contend that the manual is inapplicable because the project was approved prior to its issuance.

It is also undisputed that such hearings as were required by 23 U.S.C. § 128 prior to its amendment in 1968 were held and the appropriate certifications submitted to the federal government.

The district court, granting summary judgment, held that no more was required, since the project had received federal design approval prior to the earliest critical date.

The plaintiffs contend that the record discloses a factual issue as to the date of federal design approval. That approval, they say, did not take place until October 13, 1969, when certain changes in the design of an interchange between Route 280 and Edwards Road were considered and approved by the federal authorities.

The affidavits and testimony disclose an undisputed chronology of events in the slow progress of Project I–280 prior to October 13, 1969. First proposed in the nineteen twenties, and studied by the State Highway Department in the late forties, the road became a proposed part of the federal interstate highway system in 1956. On December 17, 1956, the New Jersey Highway Department undertook studies to determine the best location. On November 9, 1961, it held a public hearing on location of the part of the highway here involved. This was the only hearing required by 23 U.S.C. § 128 prior to the 1968 amendment. It was the equivalent of the corridor hearing specified in the Policy and Procedure Manual. On March 2, 1962, the location or alignment of the road was approved by the Bureau of Public Roads, Department of Commerce. On February 20 and April 16, 1964, the Bureau of Public Roads approved a preliminary design, or alignment profile. On April 8, 1966, the State was authorized to proceed with acquisition of right of way for part of the route. On May 24, 1966, the right of way authorization was enlarged to include the portion of the highway now in suit. On November 18, 1966, the Bureau of Public Roads approved essentially complete contract drawings. The State advertised for bids on the portion of Route 280 here in issue on April 11, 17 and 24, 1969, and the Bureau of Public Roads concurred in the award of construction contracts on June 25, 1969. On October 13, 1969, the post-contract

design change of the Edwards Road interchange was approved by the Bureau of Public Roads.

No statute defines the time when federal approval of a highway project takes place. Bearing on that question are these regulations:

23 C.F.R. § 1.10

"(b) *Approval.* No project or part thereof for actual construction shall be advertised for contract nor work commenced by force account until plans, specifications, and estimates have been submitted to and approved by the Administrator and the State has been so notified."

23 C.F.R. § 1.12

"No work shall be undertaken on ny Federal-Aid project, nor shall any project be advertised for contract, prior to authorization thereof by the Administrator."

23 C.F.R. § 1.13

"Subsequent to authorization by the Administrator to proceed with a project or any undertaking thereunder, no change shall be made which will increase the cost of the project to the Federal Government or alter termini, character or scope of the work without prior authorization by the Administrator."

Also relevant is the definition, in the Policy and Procedure Memorandum, of a highway design public hearing, quoted hereinabove. Section 6 of that memorandum further provides:

"6. Hearing requirements.

a. Both a corridor public hearing and a design public hearing must be held * * * with respect to each Federal-Aid highway project that:

(1) Is on a new location; or

(2) Would have a substantially different social, economic or environmental effect; or

(3) Would essentially change the layout or function of connecting roads or streets."

23 C.F.R., Chapter I, appendix A.

The only testimony at the hearing on the time when federal design approval was final was that of Robert Kellum, Division Engineer for New Jersey, Bureau of Public Roads, Department of Transportation. He stated that final approval took place on November 18, 1966, when essentially complete contract drawings were approved (100a). That testimony is consistent with 23 C.F.R. § 110(b). He indicated that minor details could be changed without the necessity for a new approval. This is consistent with 23 C.F.R. § 1.13. Mr. Kellum did not testify as to the meaning of § 6(a) of the Policy and Procedure Memorandum, nor did any other witness, but § 6(d) 2 of the memorandum indicates that it is inapplicable to a project which was approved before its effective date. No affidavit or testimony was submitted by plaintiffs to contradict Kellum's testimony or to suggest that the memorandum is applicable to projects which have already received design approval.

■ The district court concluded that there was no factual dispute as to when final design approval was given. It accepted Kellum's uncontradicted testimony that design final approval was made on November 18, 1966. That testimony, by the administrator charged with the administration of the statutes in question, is consistent with the statutes and the regulations of the Department of Transportation. Summary judgment was proper. Rule 56(c), Fed.R.Civ.P.

■ We have considered the defendants' motion to dismiss the appeal as moot because the work has proceeded in the interim and the ecological damage cannot be undone. That motion is denied. Some relief would still have been possible had the plaintiff prevailed.

The judgment of the district court will be affirmed.