**ARLINGTON COALITION ON TRANS-PORTATION et al., Plaintiffs,**

v.

**John VOLPE, Secretary of Transportation, et al., Defendants.**

**Civ. A. No. 59–71–A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

Oct. 8, 1971.

Frances G. Beck, Arlington, Va., Donald S. Burris and Lawrence J. Latto, Shea & Gardner, Washington, D. C., for plaintiffs.

Stuart Dunn, Asst. Atty. Gen., William B. Moore, Arlington, Va., for defendant Fugate.

Charles Radigan, Arlington, Va., for intervenor Arlington Chamber of Commerce.

Grayson P. Hanes, Fairfax, Va., for intervenor Fairfax County Chamber of Commerce.

Irwin L. Schroeder, Dept. of Justice, Gilber K. Davis, Asst. U. S. Atty., for the government.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

The plaintiffs want this Court to stop further construction of I–66 through Arlington County. The defendants and intervenors insist that this interstate highway be completed without further delay.

The plaintiffs are four residents of Arlington owning land in the corridor selected for the highway and two unincorporated associations interested in the preservation of environmental and community values, including sound transportation planning in Arlington County.

They contend that a new location or corridor public hearing must be held before further action can be taken in re the planning and construction of the

highway—first, because state authorities failed to submit a transcript of the 1958 public hearing to the Secretary of Transportation prior to federal approval as required by 23 U.S.C. § 128—second, because the 1958 hearing in any event was outdated due to the passage of time—and third, because the 1968 amendment of § 128 requires consideration of the economic and social effect of the highway's location and its impact on the environment.

The plaintiffs also contend that the 1958 hearing is insufficient to permit the use of I-66 funds for the planning, relocation and construction of a portion of Lee Highway (US 29-211) in that this item was then neither mentioned or discussed—and that the Secretary of Transportation is in clear violation of § 138 of the Federal Highway Act, 23 U.S.C. § 138, and 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), both of which provide that the Secretary shall not approve any program or project that contemplates the use of any public park unless he has determined that (1) there is no feasible and prudent alternative for the use of such land, and (2) such program includes all possible planning to minimize harm to the park.

Lastly, the plaintiffs say the Secretary of Transportation has violated § 102 of the National Environmental Policy Act, 42 U.S.C. § 4332(2) (C) by failing to require the filing of an environmental impact statement before permitting further completion of I-66 after the effective date of the Act.

The defendants are the Secretary of Transportation and the Division Engineer of the Federal Highway Administration, and the Commissioner of the Virginia Department of Highways and the Recorder of Deeds of Arlington County, Virginia. (The latter has been dismissed as a party defendant.) The intervenors are the Arlington County Chamber of Commerce and the Fairfax County Chamber of Commerce.

The defendants insist that the Congress of the United States has entrusted to their discretion the desirability and necessity for the construction of I-66 and that their exercise of this discretion is not subject to review, absent arbitrary and capricious action. They do not question judicial review of their administrative actions subject to the provisions of the Administrative Procedure Act, 5 U.S.C. § 701, et seq.—They further say they have fully complied with all federal and state statutes requisite to the location and construction of I-66.

The Commissioner of the Virginia Department of Highways asserts the additional defense of sovereign immunity under the Eleventh Amendment of the Constitution of the United States.

The intervenors say their respective counties have realigned their highway systems and have predicated much of their business and industrial zoning in reliance upon the building of I-66. Further, that millions of dollars of public and private money has been spent on both private and public developments, much of which will be seriously impaired or lost if the completion of the highway is either unduly delayed or abandoned.

Both claim laches on the part of the plaintiffs in not timely filing this suit.

This case was heard and decided upon the well prepared stipulation of facts and exhibits and agreed issues of law, all of which have been filed herein and made a part hereof—and upon the briefs and argument of counsel.

A brief summary of the stipulated facts and history of the development of I-66 discloses that it is a part of the forty-one thousand mile system of highways authorized by Congress in 1956, 23 U.S.C. § 103(e). The highways are built through Federal-State cooperation—the Federal government, ninety per cent of the cost; the State, ten per cent—Actual construction is undertaken by the State with prior Federal approval of the successive steps required to complete the project.

I-66 connects Washington, D. C., with I-81, a major inland north-south route running through the Shenandoah Valley

—and provides major arterial service along the corridor through northern Fairfax and Arlington Counties and to the center of the District of Columbia.

The building of an interstate highway begins with the inclusion of the route on the interstate system, which places a route on a map connecting points without specification of the place on the ground where the road will be built.

Next, the corridor for the highway is chosen by the State. There are no established limits to the width of the corridor—anything from five hundred yards to a half mile—Corridor approval by the Federal highway officials is preceded by a public hearing at which alternate corridors are presented for public comment, at which interested citizens are given an opportunity to record their views as to the effect of the proposed highway on the community.

After the corridor has been approved the engineers and survey crews further narrow the location of the roadway as the design is developed—Eventually a detailed location is made and approved. Thereafter acquisition of the necessary right-of-way is authorized—Federal funds are then committed to the extent necessary to acquire the right-of-way.

The total mileage of I–66 is 75.4 miles, 25 miles of which have been completed.

The Virginia Department of Highways began preliminary studies for the location of I–66 through Fairfax and Arlington Counties prior to 1958 and completed three of the studies regarding the location of the highway in April and October 1958.

A public hearing was held in Arlington on October 29, 1958 to consider a corridor for I–66 through Arlington. Four alternate routes were then considered and discussed. The Federal and State engineers and some of the plaintiffs were present at this hearing. This hearing followed a similar hearing held before the Arlington County Board on September 27, 1958, at which time citizens and civic associations presented their views.

The Arlington County Board recommended that Corridor No. 2 (Fairfax Drive-Bluemont Drive) be approved. The Virginia State Highway Commission adopted this recommendation on February 25, 1959 and submitted the same to the Federal Bureau of Public Roads on March 10, 1959. Additional information was submitted by the Division of Regional Engineers, and the Fairfax Drive-Bluemont Drive corridor was formally adopted on June 4, 1959.

On February 26, 1960 Federal officials informed the Virginia Department of Highways that the public hearing held on October 29, 1958 fulfilled the requirements of 28 U.S.C. § 128 and that no additional hearing was required.

In 1961 and 1962 right-of-way acquisition was authorized for the total length of I–66 from the Beltway to Rosslyn— The initial acquisition was for six lanes. In 1965 the project was expanded to eight lanes—The necessary additional authorizations were had on various dates between June of 1962 and July 1966.

Utility relocation projects were approved in 1964, 1965, 1966, 1968 and 1970.

Public hearings to consider the proposed design of I–66 between Washington Boulevard and Lynn Street were held on December 7, 8 and 9, 1970.

From the date of the location approval, some 924 parcels of land had been acquired in Arlington and Fairfax Counties, including 581 dwellings and 68 businesses, at a cost of $28,670,123.07. Thirty-eight dwellings and one business property are yet to be acquired at an estimated cost of some $5,000,000.00. Four hundred seventy-five families and 68 businesses have been relocated.

The Virginia State Highway Department has spent over a million and a half dollars for necessary preliminary engineering—Joint field inspections with plans in hand have been made, beginning in 1961 to date. These field inspections have all been documented by letters indicating that a substantial agree-

ment had been reached in the field on all points.

The present proposed location of I–66 has been noted on the Arlington County General Land Use Plan since 1961 and the general corridor for I–66 has been published in local newspapers on many occasions since that date.

Some 9.6 acres of Bon Air Park are to be taken for use in connection with I–66. The part to be used for the highway is designated on the Arlington County General Land Use Plan dated August of 1961, with amendments through January of 1964. This tract of land was acquired by Arlington County for park and highway purposes.

Approximately five acres of Spout Run Parkway will be taken for I–66 use.

If the proposed I–266 route to the Three Sisters Bridge is built, some 31.6 acres of Spout Run Parkway will be conveyed to the Virginia Department of Highways—13.97 acres of which will be utilized for I–266—this land to be replaced by acquisition of tracts adjacent to the George Washington Parkway.

If the bridge and I–266 are not built—neither of which is a part of the I–66 project—some changes in the design of I–66 will be necessary—These were considered and approved August 7, 1968.

Portions of I–66 have been constructed in Arlington County—0.298 miles from Lynn Street to the west end of the Theodore Roosevelt Bridge, 1962—construction on the bridge over Little River, 1963—median barrier and guard rail on the bridge, 1963—box culvert under Lee Highway near Kirkwood Road, 1968.

The Old Dominion right-of-way was acquired in 1965—The Metro took an option in 1967 to use the median of the right-of-way for rapid transit—The option was exercised April 24, 1970—Major design features for I–66 west of Glebe Road for joint use with Metro have been completed.

Right-of-way acquisition approval for division and expansion of Lee Highway (29–211) between Kirkwood Road and Lynn Street was given in January of 1961 and April of 1962.

■ The State defendants' claim of sovereign immunity under the Eleventh Amendment of the United States Constitution is without merit—This is not a suit brought against the State of Virginia—It is a suit brought against its Commissioner of the Department of Highways to compel him and others to comply with the requisite Federal laws in the building of I–66 through northern Virginia. Suits involving various aspects of interstate highway projects have been filed in the Federal courts—None have found jurisdiction over State officials lacking. See Citizens Committee for Hudson Valley v. Volpe, 302 F.Supp. 1083 (SDNY 1969), affirmed 425 F.2d 97 (2nd Cir. 1970); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Ely v. Velde, 321 F.Supp. 1088 (EDVa. 1971).

■ Although this suit could and probably should have been brought sooner, the delay—standing alone—is hardly sufficient to justify dismissal—It has been considered, however, in determining whether the errors complained of were prejudicial to the plaintiffs.

The plaintiffs have failed to sustain their claim—that a new location or corridor hearing must be held before further work can proceed—by law or fact.

The transcript requirement of 23 U.S.C. § 128(b) was satisfied by the submission of a complete tape recording of the October 29th public hearing—It was reviewed extensively by the Federal officials and was only a part of the evidence that was considered in deciding upon the present route.

PPM 20–8, in effect at the time of the 1958 hearing, provided that "a public hearing shall be held and a transcript made thereof"—Nothing then was said about a written transcript. Tape recordings were then and now used in certain phases of federal court proceedings—and often heard by Circuit and District Court judges—in lieu of written transcripts.

■ The fact that PPM 20–8 was amended June 16, 1959—some seven months after the date of the public hearing and twelve days after date of approval—stating that tape recordings will not be accepted as a transcript does not vitiate the October 29th hearing: first, because the amendment is not retroactive; and secondly, because the question was specifically raised by the Virginia Location and Design Engineer in his letter of November 18, 1959—and the Federal officials, after reviewing the matter, advised the Virginia Department of Highways on February 25, 1960 that no additional hearing was required.

Submitting a tape recording instead of a written transcript at best constitutes harmless error.

Neither is a new location hearing required because of the alleged changes in the transportation situation during the past thirteen years or because of the 1968 amendments of § 128.

■ Time alone is not enough, especially when the record discloses that design planning and actual construction have continued uninterrupted from the date of the corridor approval to the date of the filing of this suit.

The transportation needs of the area have been monitored over the years by the many agencies responsible therefor —and the officials charged by law for selecting the location for I–66 have reaffirmed their choice on numerous occasions up to the present time.

The evidence in this record supports their decision to continue the originally approved location of I–66 without a new location hearing—and it will not be disturbed.

PPM 20–8 as amended January 14, 1969 is not applicable because 6(d) of that PPM exempts projects which received location approval prior to January 14, 1969—The corridor for I–66 was approved June 4, 1959—The plaintiffs' reliance on D. C. Federation of Civic Associations v. Volpe, 316 F.Supp. 754 (DCDC 1970) is misplaced. See Elliot v. Volpe, 328 F.Supp. 831 (DC Mass.

1971), and Wildlife Preserves v. Volpe, 443 F.2d 1273 (3rd Cir. 1971).

Although the plaintiffs now tacitly concede that a new corridor hearing would not change the location of I–66, they insist that the 1959 corridor approval did not include the division and relocation of Lee Highway between Kirkwood Road and Lynn Street.

The Congressional declaration of policy for the construction of the interstate system, as set forth in 23 U.S.C. § 101, states "existing highways located on an interstate route should be used to the extent that such use is practicable, suitable and feasible. * * *"

The Federal Highway Administrator has always construed this policy to mean that it should and may include the cost of improvement of local roads when necessary or convenient to accommodate the traffic related to the interstate roads being built.

The grade separation structure and interchange at Lee Highway near Kirkwood Road, including the ramps and roadway coming off the ramps, and the separation structure from Veitch Street to North Lynn, were both approved to provide local access and to replace disrupted service—The transcript of the 1958 hearing and the subsequent design and road location approvals clearly establish that that portion of Lee Highway here questioned was within the corridor as approved in June of 1959.

■ The Federal officials have concluded that the 1958 public hearing adequately considered the essential features of these plans. They have also approved the costs of these local improvements as a part of the cost of I–66. These determinations are controlling unless plainly inconsistent with the relevant statutes. See Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

Further public hearing on this phase of the building of I–66 is not required.

Next, the plaintiffs seek to stop further construction of I–66 by invoking the provisions of § 138 of the Federal-

Aid Highway Act, 23 U.S.C. § 138, and 4(f) of the Department of Transportation Act, 49 U.S.C. § 1653(f), both of which provide that the Secretary of Transportation shall not approve any program or project that contemplates the use of any public park until he has made certain determinations.

They claim the Secretary of Transportation approved construction of the culvert for Spout Run Creek—the design for the whole segment, including five acres of Spout Run Parkway and the 1968, 1969 and 1970 utility relocations—without complying with the statutory directive.

Although they do not contend these statutes are retroactive, they say they should be construed to cover all work begun after their effective dates—August 23, 1968 for § 138 and April 1, 1967 for § 1653(f)—since the purpose of the statutes is to bar the use of park land for highway purposes except under certain conditions.

■ To so do would require the abrupt halt of all work then being performed on all interstate highways that traversed any park land regardless of the percentage of completion or costs incurred—Clearly that was not the intent of Congress. These statutes are not applicable to interstate highways approved prior to their effective dates—I–66 was approved June 4, 1959.

The Court of Appeals for the Third Circuit expressly held in Wildlife Preserves v. Volpe, supra, that these statutes were not to be given retroactive effect. See also Triangle Improvement Council v. Ritchie, 314 F.Supp. 20 (SDWVa.), affirmed 429 F.2d 423 (4th Cir. 1970).

The box culvert under Lee Highway and the utility relocations complained of do not directly involve any of the so-called park land—The box culvert is some 950 feet from the nearest publicly owned land, the construction of which was authorized more than a month prior to the effective date of 23 U.S.C. § 138. Al-though the utility relocations took place after the effective date of § 1653(f), they were but a part of the right-of-way approvals given in 1962—Site preparation, including utility relocations, is authorized by the right-of-way approval.

Further, these statutes are inapplicable to I–66 because Arlington County and the National Park Service have not found that the areas under their respective jurisdictions are of local or national significance for park purposes, as required by these statutes.

Bon Air Park was acquired by Arlington County in 1950 for the specific purpose of highway use—The portion to be utilized for I–66 has been designated on the County's General Land Use Plan since 1961.

Spout Run Parkway is now being used for park purposes and has been since prior to I–66 approval in 1959. The National Park Service has agreed to the use of five acres of this area for I–66 and 13.97 acres for I–266 (the proposed connection with the proposed Three Sisters Bridge) on condition that the land be replaced with other similar land. Although there has been no specific finding by the appropriate Arlington County and National Park Service officials that these lands are of local or national significance for park purposes, the only inferences that can be drawn from the facts clearly indicate that these officials view these areas more important for highway than for park purposes.

■ Finally, the plaintiffs invoke the provision of the National Environmental Policy Act of 1969. This Act became effective on January 1, 1970. Section 102 (2) (C) requires that major federal action be accompanied by the filing of a statement of environmental impact of this action with the Council on Environmental Quality.

A number of courts have held that this Act is not applicable particularly to cases involving interstate highways. See Pennsylvania Environmental Council v. Bartlett, 315 F.Supp. 238 (MDPa.1970);

Brooks v. Volpe, 319 F.Supp. 90 (WD Wash.1970); and Elliot v. Volpe, supra.

The only activity on I–66 since January 1, 1970 has been the completion of work authorized or approved prior to that date.

The instructional memorandum of the Federal Highway Administration, issued November 30, 1970, stated that an environmental impact statement under NEPA would be required on all projects which had not received design approval prior to February 1, 1971.

Design approval for I–66 was had January 21, 1971—Nevertheless the defendants in this case have stated in their answer that regardless of the technical question of the applicability of NEPA to future actions, they intend to require the filing of an impact statement prior to further construction approval—Virginia is now preparing that statement.

The federal defendants have further assured the Court that they will give the impact statement, prior to approval of construction, the objective evaluation urged by the court in the Gillham Dam case, Environmental Defense Fund v. Corps of Engineers, D.C., 325 F.Supp. 728.

Although it has not been made one of the issues here to be determined, it is well known that Virginia has employed a nationally known landscape architect to investigate the environmental effects of I–66 and that he is proposing noise abatement requirements that would make Arlington County quieter than it now is.

The Three Sisters Bridge is not a part of I–66—neither is the proposed connecting road, I–266. Some adjustments in the I–66–I–266 interchange will be required if I–266 is not built. They have been considered and approved.

Therefore, there is no justification or legal requirement for further delay in completing the construction of I–66.

The plaintiffs' suit will be dismissed as of this date.