Gayle HATMAKER, Individually, and David Edwards, Individually, Plaintiffs,

v.

The GEORGIA DEPARTMENT OF TRANSPORTATION, By and Through the Commissioner of the Georgia Department of Transportation, Wayne SHACKELFORD, et al., Defendants.

Civil Action No. 1:95–cv–185–2(WLS).

United States District Court, M.D. Georgia, Albany–Americus Division.

Oct. 26, 1995.

---

**1050**

Wilbur T. Gamble, III, Dawson, GA, David Jonathan Grindle, Columbus, GA, for Gayle Hatmaker, David Edwards.

Cathy A. Cox–Brakefield, George P. Shingler, Atlanta, GA, for Georgia Dept. of Transp.

## ORDER

SANDS, District Judge.

Before the Court is Plaintiffs' motion for preliminary injunction, wherein, the Plaintiffs seek to enjoin the continued construction of a road widening project ("the Project") currently underway, specifically that part of the Project which would involve the removal of an oak tree ("the Friendship Oak"[1]) at the intersection of Philema Road and Jefferson Street in Albany, Georgia.[2] Plaintiffs contend that the approval of the Secretary of the United States Department of Transportation, authorizing the initiation of this partially federally funded road widening project, was given in violation of § 4(f) of the Department of Transportation Act of 1966, 49 U.S.C.A. § 303 (Supp.1995)[3], and § 18 of the Federal–Aid Highway Act of 1968, 23 U.S.C.A. § 138 (1990).[4] In enacting section 4(f), Congress determined that section 4(f) properties should be accorded paramount consideration in connection with all federally financed transportation projects. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 412–13, 91 S.Ct. 814, 821–22, 28 L.Ed.2d 136 (1971). To implement this national policy, Congress set forth specific procedures. If, in reviewing an administrative determination under § 4(f), the Court finds that the grounds for that determination are inadequate or improper, this Court is powerless to affirm an administra-

1. Intermittently throughout this Order, the Court will refer to the oak tree at the center of this dispute as the Friendship Oak, solely for the purpose of ease of identification.

2. A hearing on this issue was held before the Court on October 19, 1995.

3. Section 4(f) of the Department of Transportation Act, 49 U.S.C.A. § 1653(f), was repealed in 1983 but was recodified without substantial change at 49 U.S.C. § 303.

4. Section 18 of the Federal–Aid Highway Act, 23 U.S.C.A. § 138, is virtually identical to section 4(f) of the Department of Transportation Act, 49 U.S.C.A. § 303. For purposes of this Order, the statutes will be referred to collectively as " § 4(f)" or "section 4(f)." Section 4(f) states: (a) It is the policy of the United States Government that special effort should be made to preserve the natural beauty of the country-side and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. (b) The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States, in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of lands crossed by Transportation activities or facilities. (c) The Secretary may approve a transportation program or project requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if—(1) there is no prudent and feasible alternative to using the land; and (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

tive action based upon that decision. *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). *See Druid Hills Civic Ass'n, Inc. v. Federal Highway Admin.*, 772 F.2d 700, 714(11th Cir.1985).

## I. *STANDING*

■ To gain constitutional standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985) (citations omitted).

■ In the instant action, the Plaintiffs seek relief pursuant to § 10 of the Administrative Procedure Act (APA)[5], which provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

5 U.S.C.A. § 702 (1977). The Supreme Court has recognized that a Plaintiff can satisfy the personal injury requirement for standing to obtain judicial review of federal agency action under § 10 of the APA by making a showing of either economic or noneconomic loss. Economic losses, such as harm to competitive positioning in a commercial market or diminished bargaining power with a landlord, have consistently been recognized as injuries sufficient to establish standing. *See Data Processing Service v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). But the Supreme Court has also recognized that injuries to aesthetic values, environmental well-being, and quality of life can establish a sufficient basis for standing under § 10. *See Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). *See also Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2629–30, 57 L.Ed.2d 595 (1978); *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *American Civil Liberties Union of Georgia v. Rabun County Chamber of Commerce, Inc.*, 698 F.2d 1098, 1105 (11th Cir.1983) ("[I]n the context of environmental concerns, an effect on an individual's use and enjoyment of public land is sufficient non-economic injury to confer standing to challenge governmental actions"). Although not granting standing in *Sierra Club*, the Supreme Court stated that the personal injury requirement could be satisfied by a plaintiff who used the land in question, and for whom the aesthetic and recreational value of that land would be diminished by the proposed government action upon that land. *Sierra Club, supra*, 405 U.S. at 734, 92 S.Ct. at 1365–66.

In the case *sub judice*, Plaintiffs have alleged both economic and non-economic losses which they will incur if the Friendship Oak is cut down. Plaintiffs claim that, with the permission of the Georgia Department of Transportation ("Ga.DOT"), they have invested upwards of $8,000 to maintain the health of the tree, and that they will lose the benefits of that investment without remuneration if the tree is cut down. While this quasi-economic loss alone might not form a basis for standing, the Plaintiffs have also shown ample non-economic losses they will suffer if the tree is removed. Besides visiting the Friendship Oak to enjoy its natural beauty, the Plaintiffs decorate the tree with Christmas lights during the holidays and study the tree to gather information for use in their capacities as licensed arborists. Based on their substantial use of the Friendship Oak, the Plaintiffs have satisfied the personal injury requirement for standing, under the APA and the Constitution, to challenge an agency action to remove the tree.

The facts in the case *sub judice* also satisfy the second requirement for constitutional

---

**5.** Due to the emergency status of this action, Plaintiffs submitted a bare-bones complaint to the Court in an effort to acquire an immediate temporary restraining order. Although Plaintiffs' complaint does not specifically cite to the APA, oral arguments presented at the preliminary injunction hearing on October 19, 1995 made clear that all parties understand the Plaintiffs to be proceeding under § 10 of that act.

standing—that the injury be fairly traceable to the Defendants' allegedly unlawful conduct. Plaintiffs argue that the Georgia Department of Transportation's failure to re-·search properly the historic value of the Friendship Oak led directly to a decision by the Secretary of the U.S. Department of Transportation ("the Secretary") which violated § 4(f). Plaintiffs assert that had the Secretary been able to exercise properly his discretion, he would not have approved a highway construction project that included destruction of the Friendship Oak. In the absence of such approval, Ga.DOT would not have been able to move forward with the Project, *see Named Individual Members of the San Antonio Conservation Society v. Texas Highway Dep't.,* 446 F.2d 1013 (5th Cir.1971); *La Raza Unida of Southern Alameda County v. Volpe,* 488 F.2d 559 (9th Cir.1973), and the tree would no longer be in immediate danger.

Lastly, Plaintiffs will be able to redress their claimed injuries through the grant of a preliminary injunction affording time to determine: (1) whether the Friendship Oak is a site of such historic significance that application of specific statutory and regulatory directives must precede any action upon it in the course of a federal-aid highway project; and (2) if the Friendship Oak is, in fact, such an historic site whether it may be destroyed in accordance with those statutory and regulatory provisions.

Thus, Plaintiffs have sufficiently established their right to standing, under the Constitution and the APA, to gain judicial review of the approval by the Secretary of the U.S. Department of Transportation of the Ga. DOT highway construction project that would result in the felling of the Friendship Oak.

## II. *SOVEREIGN IMMUNITY*

The Georgia Department of Transportation, by oral motion at the preliminary injunction hearing of October 19, 1995, moved to be dismissed from this action for want of jurisdiction. Ga.DOT argues that pursuant to the Eleventh Amendment of the United States Constitution, suits, such as this one, for equitable and injunctive relief against the State of Georgia are barred in federal courts unless Georgia consents to the jurisdiction of the court.

The Eleventh Amendment states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the text of the amendment does not speak to suits against a state by its own citizens, the Supreme Court has interpreted such suits to be within the purview of the amendment. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ A state may forfeit the protections of the Eleventh Amendment, however, either by consenting to the jurisdiction of a federal court in a particular suit or, in some cases, by waiving its sovereign immunity in exchange for federal benefits. *See Arlington Coalition on Transportation v. Volpe,* 458 F.2d 1323, 1329 (4th Cir.1972); *Named Individual Members of the San Antonio Conservation Society v. Texas Highway Dep't,* 446 F.2d 1013, 1028 (5th Cir.1971); *Pennsylvania Environmental Council, Inc. v. Bartlett,* 454 F.2d 613, 624–25 (3d Cir.1971); *James River and Kanawha Canal Parks, Inc. v. Richmond Metro. Auth.,* 359 F.Supp. 611 (E.D.Va.1973).

■ The first question which must be addressed is whether a suit against the Ga.DOT is the equivalent of a suit against the State of Georgia, for Eleventh Amendment purposes. The Eleventh Circuit answered this question affirmatively in *Robinson v. Georgia Dep't of Transp.,* 966 F.2d 637 (11th Cir.1992), finding that Ga.DOT is an "arm of the state." *Id.* at 640.

■ The next relevant question is whether Ga.DOT has consented to the jurisdiction of this Court or otherwise waived its immunity from suit under the Eleventh Amendment. Although Ga.DOT appeared, through counsel, at the preliminary injunction hearing of October 19, 1995, counsel limited her statements to those concerning the challenge to this Court's jurisdiction over Ga.DOT. Coun-

sel did not participate in opening or closing arguments, nor did she examine any witnesses. Thus, Ga.DOT has not consented to the jurisdiction of this Court.

■ However, Ga.DOT waived its immunity from suit in federal court when it applied for and received federal funds under the Federal–Aid Highways Act of 1968, 23 U.S.C. § 101 *et seq. See San Antonio Conservation Society, supra,* 446 F.2d at 1028:

No one forced the State to seek federal funding, to accept federal participation, or to commence construction of a federal aid highway. The State, by entering into this venture, voluntarily submitted itself to federal law. It entered with its eyes open, having more than adequate warning of the controversial nature of the project and of the applicable law; [6]

*James River, supra,* 359 F.Supp. at 622–24:

Jurisdiction over the United States defendants ... is conferred by the Administrative Procedure Act, 5 U.S.C. § 702. This jurisdiction extends to the nonfederal defendants as well, since it is alleged that they have taken advantage of the benefits conferred by federal law and because their activities could otherwise make a sham of federal statutory requirements if the requirements must be met in this case.... RMA purposefully availed itself of the benefits of federal laws. This would constitute a waiver of sovereign immunity as to the requirements of the federal statutes involved.

At the most fundamental level, to allow Ga.DOT to apply for and receive federal funding under Title 23 yet not be subject to federal jurisdiction, when necessary to ensure compliance with the statute, would be illogical. This dilemma is particularly troubling in the case *sub judice,* for the Plaintiffs have alleged that by failing to inform the Secretary about the potential historic significance of the Friendship Oak, Ga.DOT did not provide adequate information upon which the Secretary could properly exercise his discretion under § 4(f). To allow Ga.DOT to pursue its construction project unimpeded while

a federal court determines whether the federal directive under which the state agency is acting is valid, would defeat the purpose of § 4(f), because once the Friendship Oak is removed it cannot be restored. Congress has stated in unequivocal terms that certain parklands and historic sites are to be protected at all practicable costs when constructing federal-aid highways. *See* 23 U.S.C.A. § 138. To allow Ga.DOT to escape federal jurisdiction would invite state agencies to misrepresent potential trouble items in applications for federal funds, knowing that once the funds were disbursed only federal actors would be subject to suit on the question of misappropriation. Essentially, if a federal court is unable to extend its remedial power, which is unquestioned as to the Secretary, to a state agency acting pursuant to an illegal decision by the Secretary, the remedial power is empty. *Cf. Arlington Coalition, supra,* 458 F.2d at 1329:

Actions of a state highway department challenged because furthering a project that under federal law allegedly must be reconsidered, is a matter in controversy arising under the laws of the United States. Federal jurisdiction over such state action is essential to preserve federal question jurisdiction in the application of federal statutes. It is a form of pendent jurisdiction, but based upon necessity rather than convenience and limited to preventing emasculation of the remedy clearly available against the federal respondents.

Not only have states been found subject to the jurisdiction of federal courts when spending federal funds on a federal-aid highway project, but states have also been held subject to federal jurisdiction notwithstanding a repudiation of federal funds and a desire to continue construction independently. *See San Antonio, supra,* 446 F.2d at 1027 (rejecting state resolution to continue Title 23 project with 100% state funds in order to avoid federal regulation); *La Raza, supra,* 488 F.2d at 562–63 ("Withdrawal [from a Title 23 project] must be clear and unambiguous and prior to causing significant harm to ... the environment in a manner inconsistent with

**6.** *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (adopting into the Eleventh Circuit all Fifth Circuit decisions prior to October 1, 1981).

the intent of ... 23 U.S.C. § 138"). Once a state enters the realm of federal-aid highway benefits, it is subject to the accompanying array of federal regulation.

For the foregoing reasons, the Georgia Department of Transportation is subject to the jurisdiction of this Court in the above-styled action, notwithstanding the strictures of the Eleventh Amendment.

■■■ Even if Ga.DOT itself was not subject to the jurisdiction of this Court pursuant to the Eleventh Amendment, Wayne Shackelford, the Commissioner of Ga.DOT and a named defendant in this action [7], is subject to this Court's jurisdiction. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10, 105 L.Ed.2d 45 (1989) (finding suits for injunctive relief against state officials acting in their official capacities not to be the equivalent of actions against the state); *Kentucky v. Graham*, 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985) ("In an injunctive or declaratory action grounded on federal law, the State's immunity *can* be overcome by naming state officials as defendants") (emphasis in original); *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See also Thompson v. Fugate*, 347 F.Supp. 120, 123 (E.D.Va.1972) (finding injunctive relief suit brought under Federal–Aid Highways Act against the Commissioner of the Virginia Department of Highways to be brought against a person rather than the state); *Arlington Coalition on Transp. v. Volpe*, 332 F.Supp. 1218, 1222 (E.D.Va.1971) ("Suits involving various aspects of interstate highway projects have been filed in Federal courts—none have found jurisdiction over state officials lacking") (citations omitted). Thus, the actions of Ga.DOT, as ordered or affirmed through Wayne Shackelford, are subject to the jurisdiction of this Court and not protected under the Eleventh Amendment insofar as prospective injunctive relief is concerned.

■■■ The Court finds unconvincing the State of Georgia's argument, as set forth in its response to the Plaintiffs' motion to amend the complaint to add Wayne Shackelford, that this is actually a suit for damages because an injunction would delay construction and subject Ga.DOT to delay claims under state law by those contractors already working on the Project. The Supreme Court has found that "ancillary effects on the state treasury [are] a permissible and often inevitable consequence" of injunctive relief. *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974). The potential penalties which the state points to are exactly the type of ancillary penalties to which *Edelman* speaks.

■■■ The Court also finds the State's argument that an injunction in this action would not provide prospective relief insofar as it pertains to Commissioner Shackelford because "there is no prospective action on the part of Commissioner Shackelford that implicates federal law," to be unpersuasive. The State essentially argues that the Commissioner's "federal" actions concluded when the State's application for federal funds was sent to the Secretary, and that the Commissioner's decisions on how to proceed with the federally funded project are solely discretionary and not governed by federal law. As set forth above, such an argument cannot stand.

### III. *PRELIMINARY INJUNCTION*

■■■ A preliminary injunction is an extraordinary remedy which should not be granted "unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Salsbury Laboratories, Inc. v. Merieux Laboratories, Inc.*, 735 F.Supp. 1537, 1541 (M.D.Ga.1987) (quoting *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)). First, there must be a substantial likelihood of success on the merits of the litigation at trial. Second, plaintiff must be faced with irreparable harm. Third, the Court must balance the benefits and the burdens to each side of this litigation and must determine that the injury to plaintiff outweighs any harm the preliminary injunc-

---

7. The Court hereby incorporates into this Order, its Order of October 24, 1995 adding Wayne

Shackelford, Commissioner of the Georgia Department of Transportation as a party defendant.

tion will cause to defendant. Finally, the court must examine and determine that the preliminary injunction will not be adverse to the public interest. *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989).

## A. Likelihood of Success on the Merits

▆ Ga.DOT applied for federal assistance pursuant to the Federal–Aid Highway Act, 23 U.S.C.A. § 101, et seq. Under the strictures of that act the Secretary cannot approve funding for any program or project that violates 23 U.S.C. § 138 (§ 4(f)). As it is impractical for the Secretary to personally visit all sites affected by all proposed plans submitted to the Department of Transportation for review, the Secretary relies upon applicants to submit detailed environmental statements fully disclosing any § 4(f) properties or potential § 4(f) properties that might be affected by the proposed plan. *See generally*, 23 C.F.R. § 771.135. Although the state applicant is vested with a certain amount of discretion in determining whether it must inform the Secretary about a particular property or site, in the absence of an actual and reasonable determination by the applicant to the contrary, even questionable § 4(f) properties should be included in the statement. 23 C.F.R. § 771.135(c).[8]

The relevant question, therefore, is whether, based upon the facts and circumstances known by Ga.DOT at the time of their application for federal funds in connection with the Project, Ga.DOT had a duty to inform the Secretary of the potential § 4(f) status of the tree.

· To determine whether a site is or could be a § 4(f) property, an applicant must refer to 23 C.F.R. § 771.135(e):

> (e) In determining the application of section 4(f) to historic sites, the Administration, in cooperation with the applicant, will consult with the State Historic Preservation Officer (SHPO) and appropriate local

officials to identify all properties on or eligible for the National Register of Historic Places (National Register). *The section 4(f) requirements apply only to sites on or eligible for the National Register **unless** the Administration determines that the application of section 4(f) is otherwise appropriate.* (emphasis added).

To be considered for the National Register a property or site must meet the following requirements pursuant to the National Historic Preservation Act (NHPA). 16 U.S.C.A. § 470a. The criteria for evaluation under NHPA are set forth in 36 C.F.R. § 60.4, which provides, in pertinent part:

> The quality of significance in American history, architecture, archeology, engineering, and culture is present in districts, sites, buildings, structures, and objects that possess integrity of location, design, setting, materials, workmanship, feeling, and association and
>
> (a) that are associated with events that have made a significant contribution to the broad patterns of our history; or
>
> (b) that are associated with the lives of persons significant in our past; or
>
> (c) that embody the distinctive characteristics of a type, period, or method of construction, or that represent the work of a master, or that possess high artistic values, or that represent a significant and distinguishable entity whose components may lack individual distinction; or
>
> (d) that have yielded, or may likely yield, information important in prehistory or history.

In light of these standards, the record before the Court indicates that Ga.DOT made an unreasonable determination not to include the Friendship Oak, in its submission to the Secretary, and, therefore, the Secretary was never able to properly exercise his duty and discretion in relation to the tree vis-a-vis the proposed construction.

---

**8.** Specifically, 23 C.F.R. § 771.135(c) provides that:

> (c) Consideration under section 4(f) is not required when the Federal, State, or local officials having jurisdiction over a park, recreation area, or refuge determined that the entire

site is not significant. **In the absence of such a determination, the section 4(f) land will be presumed to be significant. The Administration will review the significance determination to assure its reasonableness....** (emphasis added).

David Studstill, Head of Ga.DOT Administrative Office of Environmental Communications, whose duties include verifying that all work for which Ga.DOT contracts is in compliance with applicable laws and regulations, testified that he considered § 4(f) in his review of the Project. Based on this review, Mr. Studstill determined two properties warranted § 4(f) examination—a bridge and a 3-acre segment of Chehaw Park. Subsequent to his initial review, a public hearing was held to announce the proposed Project to the public and elicit community response, Mr. Studstill testified that 144 citizens attended this meeting. While the stated purpose of this meeting was meant to discuss the Project in general, without reference to the tree, a significant number of those present voiced opposition to the plan due to its impact upon the Friendship Oak. Both at this meeting and through communications subsequent to the meeting, hundreds of people suggested the historic and local significance of the Friendship Oak to Ga.DOT.

 In response to the public outcry, Mr. Studstill consulted with the Ga.DOT state historian to determine whether the tree was of such significant historic value that it deserved § 4(f) examination. Based on the testimony of Mr. Studstill and Dr. Gall D'Avino, a Ga.DOT state historian, after cursory research and consultation with SHPO, the

decision not to include the tree in the submission to the Secretary was based upon, (1) the absence of the tree on the list of historic sites on the National Register; and (2) the fact that nobody had ever heard of a single tree being eligible for the National Register.[9]

The Court is troubled by the circular evaluation process that Ga.DOT employed to determine whether the tree could be eligible for the National Historic Register. It is not surprising, given the Ga.DOT paradigm—if a single tree has not been, then a single tree cannot be included on the National Register—that Ga.DOT determined that the Friendship Oak categorically could not be eligible for the National Register, without ever fully researching the veracity of the allegations of the oak's historic significance.[10]

When Plaintiff's counsel described to Dr. D'Avino the various events of historic significance alleged to have taken place at or near the Friendship Oak, Dr. D'Avino testified that if the veracity of the allegations could be proven, the tree is the type of site that would warrant a recommendation to the Secretary to evaluate the site's § 4(f) status. These allegations were known to Ga.DOT at the time of its application for federal funds, yet no recommendation was presented to the Secretary about the tree.

---

9. Notwithstanding the determination that the oak tree was not a potential § 4(f) site, Mr. Studstill testified that as a "courtesy" to the people of Albany Ga.DOT prepared an alternate plan, which did not involve removal of the Friendship Oak, for submission to the Dougherty-Albany Regional Planning Organization. Mr. Studstill testified that the creation of the alternate plan, was in no way related to Ga.DOT's responsibilities under § 4(f), but rather was created "out of respect for the people of Albany." The alternate plan cost approximately $300,000 more than the original plan and the planning organization unanimously rejected the plan. It appears as though the plan was not presented to the planning organization in the context of § 4(f) but rather as an expensive alternative which the planning organization could choose if they preferred it. Further, even if § 4(f) was discussed in the presentation, it is the duty of the Secretary and not the planning organization to determine whether use of an alternate route is appropriate and necessary in this case. Thus, presentation to a local tribunal does not relieve Ga.DOT of its duty to inform the Secretary.

10. The following testimony by Mr. Studstill, although describing a recent inquiry rather than one made at the time of the submission of the environmental statement, is typical of the type of inquiry made by Ga.DOT throughout the planning process:

> Several weeks ago, when the Philema Oak was coming up in the newspapers and the local citizens and courts down here, we again called the State Historic Preservation Officer and talked to the deputy SHPO and asked him about a single tree standing alone—could it be considered an eligible historic resource under the national eligibility criteria.... Based on his knowledge, a single tree by itself could not be considered a single historical resource.

Clearly, the question asked determined the answer received. Furthermore, the Defendants have not shown, nor is the court aware of any statute or regulation that affirmatively prohibits a single tree from being eligible for inclusion on National Register.

Based upon the testimony of Mr. Studstill and Dr. D'Avino, the Court finds that Ga. DOT did not make a reasonable inquiry into the potential historic significance of the Friendship Oak and the area surrounding the oak. As a result, Ga.DOT's decision not to include the site in the environmental statement submitted to the Secretary was an abuse of discretion for two reasons.

First, given the then available information (even though in dispute), Ga.DOT should have recognized that the site was at least potentially eligible to be placed on the National Register. As such, it was incumbent upon Ga.DOT, pursuant to 23 C.F.R. § 771.135(e), to notify the Secretary of the potential § 4(f) status of the tree.

Second, even if Ga.DOT had properly determined that the tree was not National Register eligible, the facts and circumstances known to Ga.DOT at the time of the submission of the environmental statement to the Secretary required Ga.DOT to inform the Secretary of the oak's potential § 4(f) status. Under 23 C.F.R. § 771.135(e) the Secretary is vested with the discretion to determine whether a site deserves § 4(f) status based on factors other than National Register status or eligibility. In light of the enormous public response and repeated assertions of the tree's historic significance, Ga.DOT had a responsibility to include the site in its environmental submission to the Secretary so that the Secretary could properly exercise the discretion granted to him by Congress.

When reviewing a § 4(f) determination, the Court first must consider whether the Secretary acted within the scope of his authority. *Overton Park, supra,* 401 U.S. at 415, 91 S.Ct. at 823. In so doing, the Court must determine whether the Secretary's ultimate decision was arbitrary, capricious or an abuse of discretion. This assessment requires an evaluation of whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 416, 91 S.Ct. at 824; *See also Druid Hills, supra,* 772 F.2d at 713–14.

Because the Secretary was never presented with any information about the Friendship Oak, its discretion was effectively usurped by Ga.DOT. As a result, this Court cannot properly review the propriety of the Secretary's determination to authorize the Project. *Cf., Druid Hills, supra,* 772 F.2d at 717.

Accordingly, Plaintiffs have shown a likelihood of success on the merits as to the question of whether the Secretary's initial authorization of the Project was flawed.

**B. Adequacy of Remedy at Law**

This Court has determined that an irreparable harm or injury "is the single most important requirement for an injunction." *Westin v. McDaniel,* 760 F.Supp. 1563, 1569 (M.D.Ga.1991). An "injury which can be measured in dollar amounts does not constitute irreparable injury." *Salsbury Laboratories, Inc. v. Merieux Laboratories, Inc.,* 735 F.Supp. 1537, 1543 (M.D.Ga.1987).

There is no question that if the Friendship Oak is wrongfully removed no monetary sum could adequately compensate for its loss. As discussed above, Congress has promulgated an explicit national policy that the loss of "historic sites" is to be avoided at all reasonable costs. Implicit in this policy is that the loss of national resources cannot be quantified in dollar terms. Therefore, the second prong of the preliminary injunction has been met.

**C. Balance of Harms**

While the Court acknowledges that delays in the construction of the Project may be costly and frustrating to Ga.DOT, the Court has a duty to ensure that the process promulgated by Congress has been followed. It is important to note, also, that these delays are the direct result of Ga.DOT's haste in planning this Project. While Ga.DOT may incur some expense if a preliminary injunction is issued, as discussed above, Plaintiffs will suffer an irretrievable loss if one is not issued.

**D. Public Interest**

This case is not simply about a tree. This controversy is about the integrity of the legislative process. If a state is allowed to arbitrarily circumvent the procedures set forth by Congress to protect a policy of

national interest, the public loses faith in our system of government, and the nation suffers an injury to its most fundamental precepts. The vociferous demonstrations by the local and national public express the public's interest in assuring that the law is properly applied in this case. Thus, the issuance of a preliminary injunction in this case will in no way harm, and in fact will protect, the public interest.

To repeat, because the Secretary was never presented with **any** information about the Friendship Oak, he was unable to exercise the discretionary authority granted to him by Congress. As a result, this Court cannot properly review the propriety of the Secretary's determination to authorize the Project. Wherefore, the Court hereby remands this case to the Secretary of the United States Department of Transportation for a determination of whether the Friendship Oak and surrounding area require § 4(f) protections or other regulatory action.

Accordingly, Plaintiffs' request for a preliminary injunction should be, and hereby is, **GRANTED**. Until such time as the Secretary has an opportunity to appropriately evaluate the site pursuant to this Court's order and the appropriate regulatory schemes, the Defendants [11] are enjoined from continuing construction of the Project in any way that would degrade or destroy the Friendship Oak or the area within a five hundred (500) foot radius of that-tree. The Court retains jurisdiction over this action pending compliance with this Order.

---

**11.** This Order extends to all officers, agents, servants, employees, attorneys, and persons in active concert and participation with the Defendants.