101 N.J. Super. 589 (1968)
245 A.2d 67
THE TOWNSHIP OF HOPEWELL, A MUNICIPAL CORPORATION IN THE COUNTY OF MERCER, THE TOWNSHIP OF FRANKLIN, A MUNICIPAL CORPORATION IN THE COUNTY OF SOMERSET, AND THE TOWNSHIP OF PISCATAWAY, A MUNICIPAL CORPORATION IN THE COUNTY OF MIDDLESEX, ALL INDIVIDUALLY AND ON BEHALF OF AFFECTED CITIZENS AND ORGANIZATIONS SEVERALLY THEREIN, PETITIONERS,
v.
DAVID J. GOLDBERG, COMMISSIONER OF DEPARTMENT OF TRANSPORTATION, STATE OF NEW JERSEY, JAMES R. SCHUYLER, STATE HIGHWAY ENGINEER, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 24, 1968.
Decided July 10, 1968.
*591 Before Judges SULLIVAN, FOLEY and LEONARD.
Mr. Edward B. Meredith and Henry Spritzer argued the cause for petitioners (Mr. Edward B. Meredith, attorney for Township of Hopewell; Messrs. Spritzer & Spritzer, attorneys for Township of Franklin; Mr. Joseph Stevens, attorney for Township of Piscataway).
Mr. David A. Biederman, Deputy Attorney General, argued the cause for defendants (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by SULLIVAN, S.J.A.D.
This is an appeal under R.R. 4:88-8 from the recommendation of the Commissioner of the Department of Transportation, State of New Jersey, *592 through his highway engineer, of a proposed route alignment for Interstate Highway 95 through, inter alia, the three aggrieved municipalities of Hopewell Township, Franklin Township, and Piscataway Township.
Interstate Highway 95 is a component of the National System of Interstate and Defense Highways as established by the Federal Aid Highway Act of 1956. It enters New Jersey from the south at a point on the Delaware River, and leaves the State to the north via the George Washington Bridge. Under the Federal Act, the route alignment through a particular state shall be made by the highway department of that state, subject to the approval of the Federal Bureau of Public Roads.
In 1965, the New Jersey State Highway Department commissioned an engineering firm to study the various possible routes of 1-95 through a corridor of land in the central part of the State, roughly bounded by the Reading Railroad right of way and U.S. Route 1. The corridor extends from Scotch Road in Hopewell Township to Route 287 in South Plainfield, and is slightly more than 30 miles long.
This engineering firm undertook an exhaustive analysis of the possible route alignments through this corridor, considering data ranging from soil classification to demographic projections. This location study resulted in the selection of 34 possible routes, two of which were designated by the firm as its first and second choices respectively.
A series of public screenings of the proposed alignments was held, with residents of affected municipalities attending in their individual and representative capacities. The first of these was a pre-hearing meeting held in January of 1966 at which a presentation of the proposed route and possible alternative routes was made. Present at this gathering were the Highway Commissioner and members of the retained engineering firm. Some 37 speakers were heard. Others in attendance numbered 126, including official representatives from the New Jersey State Assembly, Counties of Mercer, Somerset and Middlesex and their respective planning *593 boards, Ewing Township, Lawrence Township, Borough of Pennington, Hopewell Borough, Princeton Township, Hillsborough Township, Montgomery Township, Borough of Rocky Hill, Millstone, Borough of South Plainfield, Rutgers University, Federal Bureau of Public Roads, Green Brook Township, New Jersey Department of Conservation and Economic Development and the Princeton 1-95 Committee. Representing appellant Hopewell Township were four of its committeemen, the township attorney, its planning consultant and a member of its planning board. Representing Franklin Township were its Mayor, Town Administrator, five councilmen, the chairman of its planning board and one planning board member and the vice-president of its Board of Education. Appellant Piscataway Township was represented by its Mayor, three committeemen, the township engineer, the chairman of its planning board, the secretary and a member of the planning board.
In May of 1966, a public hearing on the proposed alignment was held, at which time the possible alternate routes were again discussed. Some 800 persons were in attendance at the day long meeting. Slides and aerial photographs were exhibited to the audience, and the information depicted thereon was explained. Individual residents and official representatives of the affected municipalities expressed their views on and objections to the location of the proposed alignment. At the hearing, the planning boards of Mercer and Somerset Counties expressed their general approval of this alignment, while the Middlesex County planning board expressed no opinion for or against the proposed route.
A third meeting was held on September 1, 1966, this time at the behest of Franklin, Piscataway, and South Plainfield Townships. Officials of these municipalities were given the opportunity to question the State highway engineer and members of the retained engineering firm as to the ramifications of the proposed route alignment.
On June 1, 1967, the State highway engineer submitted his recommendation of a route alignment to the Federal *594 Bureau of Public Roads. The recommended route was the alignment which was selected by the engineering firm as its alternate choice. In his recommendation, the highway engineer outlined in general terms the background of conferences, analysis, and study, which had gone into the project and from which the two alignments ultimately selected by the engineering firm emerged as superior to the other lines considered. In recommending the alternate alignment, the highway engineer detailed the reasons for his preference.
It is from this recommendation by the State highway engineer that the appellant municipalities, individually and on behalf of their affected citizens, prosecute this appeal.
Pending this appeal, the Federal Bureau of Public Roads, through its division engineer, approved the recommended route from Scotch Road to Route 514, roughly the territory of Hopewell Township. Approval of the remaining sector, from Route 514 to Route 1-287 was withheld pending the receipt of additional information as to specified items.
Preliminarily, we consider the argument made by defendants that the recommendation of the proposed route alignment by the Commissioner is not a final decision or action of a State administrative agency and therefore not appealable under R.R. 4:88-8. Defendants further argue that, in any event, the action taken by the Federal Bureau of Public Roads, since the filing of the appeal herein, makes the entire matter academic.
We conclude that an interested party has the right under R.R. 4:88-8 to obtain judicial review of the Commissioner's selection of a proposed route alignment. While the administrative determination is in legal effect a recommendation only, it is the Commissioner's final decision or action in the matter and is appealable under R.R. 4:88-8.
We also conclude that the action by the Federal Bureau of Public Roads with regard to the proposed route alignment, taken after this appeal had been filed, did not oust this court of jurisdiction.
*595 We proceed to consider the meritorious questions involved.
Appellants argue that the recommendation of the proposed route alignment made by the Commissioner through his highway engineer was illegal, ultra vires, and void. In substance, appellants' argue that Interstate Highway 95 will consist of a series of State highways inter-connected with those of neighboring states, but that essentially the highway, as it traverses the State of New Jersey, will constitute a State highway. Appellants argue that in New Jersey the designation of the routes comprising the State highway system has been retained by the Legislature and that there must be legislative authorization of a route alignment to give it legality.
We do not agree that the authorities relied on by appellants, and cited in its brief, apply to interstate highways established under the Federal Aid Highway Act. Our Legislature has clearly indicated its intent that New Jersey participate in the Federal aid highway program. It has empowered the Highway Commissioner to perform whatever acts are required by Federal Statute to qualify the State for Federal highway aid. Recommendation of proposed route alignments by the highway department of the particular state is one of such acts. The powers granted the Commissioner under the various State statutes must be construed liberally so as to carry out the basic purpose of providing adequate highway facilities throughout the State. Participation in the Federal highway aid program is clearly within the scope of the statutes.
Appellants also contend that the Commissioner's recommendation is invalid because it was not submitted to local planning boards for study and approval. This contention lacks merit since N.J.S.A. 40:55-1 et seq. is not applicable to the State of New Jersey. Moreover, the record indicates that the Commissioner consulted the planning boards of each county and municipal government affected by the proposed route and solicited their recommendations.
Appellants next argue that, in combination, a defective notice, improper hearing, and patent failure of cooperation *596 with local municipalities, render the promulgated route void. Specifically, it is argued that defendants failed to comply with the requirements of Federal statute and regulations that local needs be given equal consideration; that appropriate local officials be given a voice in the selection of the route; that the economic effects on the locality be considered; that opportunity be given to express objections to the proposed route; and that full consideration of alternatives be had. As to the notice, it is argued that the map which accompanied it was manifestly insufficient to enable anyone to determine precisely whether the proposed route was through or contiguous to any particular property. Interchanges were not settled so that at the public hearing, those attending did not have a meaningful opportunity or ability to do anything other than make ad hoc comments about a route and indefinite interchanges being displayed for the first time.
We conclude that the requirements for public hearings, and notice thereof, were substantially met; that the local needs were considered; that appropriate local officials were consulted; that economic effects considered; alternate routes studied; and an opportunity to express objections to the proposed route given. The record shows that the proposed route alignment was given lengthy study and consideration.
In the letter to the Federal Bureau of Public Roads setting forth the proposed route alignment the following appears:
"The Consulting Engineers, together with members of the State's Transportation Department staff, met with representatives of county and municipal governments, planning boards, civic organizations, and private citizens to determine their thinking on a location for subject route. As a result of these discussions, a considerable number of proposals were advanced which were all studied from the viewpoint of required design standards, fitting typical sections to terrain, horizontal alignment, vertical profile, interchange locations, and right-of-way costs. Comparative estimates were made of the cost of these various alternatives advanced at the time of preliminary discussions. In addition, on each of these alignments, consideration was given to facilitation of travel, service to the existing population and industry, stimulation of intelligent and future growth, and to *597 the preservation of natural resources. After these studies were completed, the planning boards and members of official governing bodies of each of the communities represented in the defined corridor, were invited to this Department for a presentation of the findings to that stage of development. The Bureau of Public Roads was included at this presentation."
The record before us fully supports the foregoing statement.
The studies, reports, and hearings involving some 34 alternate route suggestions and evaluations thereof, too lengthy and complex to here detail, together with the opportunity for interested parties to express their views for or against the various proposed route alignments, in our opinion demonstrate that there was a fair and meaningful exploration of possible route alignments before final decision was reached.
Finally, appellants argue that the administrative action was arbitrary and capricious because it failed to suggest what evidence was acted upon, what evidence was accepted, and what consideration, if any, was given to planning, economic conservation, or sociologic or other factors. In short, it is contended that a reasoned judgment could not have been made because no basis for it was established.
We are here considering a proposed highway route alignment against the background of the Commissioner's admitted expertise in this field. In reviewing the administrative action, our function is not to substitute our judgment for that of the Commissioner even if we should disagree with his determination. The inquiry is whether there is substantial credible evidence present in the record to support the proposed route alignment.
As noted by the State highway engineer in his letter to the Federal Bureau of Public Roads, the extensive study of possible route lines indicated that two proposed lines, No. 12 and No. 21, were superior to the other lines. The letter added that from engineering, planning and sociological considerations, each of these two alignments had certain advantages *598 which made either of them acceptable as a route location. However, he concluded that "the preponderance of local planning actions and opinions favoring Line No. 12 tips the scales in favor of Alignment No. 12."
The proposed route, no matter how aligned, is bound to adversely affect some interests. The problem is to achieve a proper balance between the general public interest and local needs and considerations. So viewed, we conclude that there is substantial credible evidence present in the record to support the proposed alignment recommended to the Federal Bureau of Public Roads.
Affirmed.