**The TOWNSHIP OF HOPEWELL, a Municipal Corporation, Plaintiff-Appellant**

**v.**

**John VOLPE, Secretary of the Department of Transportation of the United States, et al., Defendants-Appellees.**

**No. 18854.**

United States Court of Appeals, Third Circuit.

Argued Feb. 5, 1971.

Decided July 13, 1971.

168

Edward B. Meredith, Meredith, Meredith & Chase, Trenton, N. J., for plaintiff-appellant.

Leonard Schaitman, Dept. of Justice, Washington, D. C., (William D. Ruckelshaus, Asst. Atty. Gen., Frederick B. Lacey, U. S. Atty., Morton Hollander, Attys., Dept. of Justice, Washington, D. C., on the brief), for federal appellees.

David A. Biederman, Deputy Atty. Gen., Dept. of Transportation, for state appellees.

Before McLAUGHLIN and VAN DUSEN, Circuit Judges, and HANNUM, District Judge.

OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

The Township of Hopewell, New Jersey, appeals from a decision by the United States District Court granting summary judgment. Appellant contends that the District Court erred in ruling that the plaintiff was barred by the doc-

trine of res judicata from proceeding in its suit against the State of New Jersey and precluded by collateral estoppel from maintaining the action against the federal defendants.

The dispute concerns the construction of Interstate Route 95[1] through the Township of Hopewell. I–95 enters New Jersey from the north via the George Washington Bridge, and extends westward to the eastern terminus of Interstate Route 80. From that point to the northern end of the New Jersey Turnpike, a short section of I–95 is under construction. The Turnpike, from its northern end to a point in Edison Township, N. J., is designated I–95. From there, I–95 extends westerly along Interstate Route 287 to a point in the vicinity of South Plainfield. I–95 enters New Jersey from the south via a new bridge over the Delaware River at Scudder Falls. The approaches to this bridge on the New Jersey side have been completed to Scotch Road. Thus there is at present a 32 mile gap in the New Jersey section of I–95 between its northern terminus on Interstate Route 287 in South Plainfield and its southerly terminus at Scotch Road. Hopewell Township is within that area.

The route in question is a north-south component of the National System of Interstate and Defense Highways, as established by the Federal Aid to Highway Act, 23 U.S.C. § 101 et seq. That Act provides a program of federal grants-in-aid (totaling 90 percent of the cost) to the states to facilitate "the prompt and early completion of the National System of Interstate and Defense Highways." (23 U.S.C. §§ 101(b), 120(c)). Under the statutory scheme, the states select the routes of the system, subject to the approval of the Secretary of Transporation. (23 U.S.C. § 103(b).[2]

In February of 1965, the New Jersey Highway Department commissioned an engineering firm to undertake a study of the various possible route alignments between Scotch Road and Interstate Route 287 through a corridor roughly bounded on the west by the Reading Railroad and the east by Route U.S. 1. This corridor is approximately 10 miles wide and 32 miles long. The purpose of the study was to determine the most feasible route through the corridor between the two designated termini which would provide the best service to the public, to industry, and to the highway users. The study was to include full consideration of all planning aspects, such as population, land use, traffic service, and the general impact of the route on the area involved. The objective of the selected alignment to be recommended was to provide the best service to the public with minimum adverse effects on the surrounding territory.

The engineering firm undertook an exhaustive analysis of the possible route alignments through the corridor, including data ranging from soil classification to anticipated future population. Meetings were held with municipal officials, local planning boards and various civic groups to discuss possible route alignment. At the conclusion of this study 34 possible route alignments had been passed upon, two of which were designated by the firm as its first and second choices respectively.

On January 12, 1966, the New Jersey Highway Department held a pre-hearing meeting during which the currently proposed route and possible alternatives were proposed. Present were the Highway Commissioner and members of the engineering consultants. Among those in attendance were various state and local officials including representatives from Hopewell Township, three of its committeemen, the Township attorney, its planning consultant and a member of its planning board. Five months later, after proper notice, the Highway De-

---

1. Hereinafter called I–95.

2. The Federal-Aid Highway Act originally vested power in the Secretary of Commerce, but such power was subsequently transferred to the Secretary of Transportation by the Department of Transportation Act, 49 U.S.C. 1655(a) (1).

partment publicly offered its proposed alignment for the location of I–95 from Scotch Road to Interstate Route 287 at a hearing on May 18, 1966, in the course of which possible alternative routes were discussed. Some 800 people were in attendance at this hearing which lasted approximately one full day. A second meeting was held on September 1, 1966.

On June 1, 1967, the State Highway Engineer submitted a letter to the Bureau of Public Roads recommending a route alignment which had been selected by the engineering firm as its alternate selection. The letter contained reasons, analyses and the criteria why this particular route was chosen. On January 26, 1968 the Bureau of Public Roads approved the alignment from Scotch Road to Route 514. The remainder was approved later.

Appellant had heretofore contested the route alignment in a suit against the New Jersey Commissioner of Transportation and the State Highway Engineer, in the Appellate Division of the New Jersey Superior Court. The latter ruled that it had jurisdiction to hear the case; that the State had not acted arbitrarily or caprciously in choosing said route and that the federal requirements had been met with regard to it. See Township of Hopewell et al. v. Goldberg et al., 101 N.J.Super. 589, 245 A.2d 67 (App.Div. 1968); cert. den. 52 N.J. 500, 246 A.2d 457 (S.Ct.1968). The appellant then brought the present claim in the United States District Court.[3] That court granted appellees' motion for summary judgment and dismissed the complaint on the grounds that appellant was barred by res judicata from proceeding against the state defendant and collaterally estopped from so suing the federal defendants. We agree with that decision.

■■ Every litigant is entitled to a full and fair day in court. The reason for the development of the doctrines of res judicata and collateral estoppel was to limit litigation and to establish finality after a person has had his day in court. The doctrine of res judicata is succinctly set forth in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948), "The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed. 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." The route alignment which had been advanced by the State, previously litigated, and approved by the Federal Government is once again made the issue in this new suit. We have the identical subject matter, the same parties of interest, Hopewell Township and the State, as in the previous action and the final judgment of the state court regarding the claims of these two parties. It is obvious that the state court would not allow retrial of this cause and neither will the federal courts.

■ Appellant contends that the district court erroneously concluded that collateral estoppel is invocable to dismiss the claim against the federal defendants. The argument made is that since the state court suit was concerned with a particular route alignment recommended by the State Engineer and the instant complaint deals with the choice of a route corridor and appellees' approval of the State's recommendation of said route, collateral estoppel cannot be called on to vitiate appellant's federal cause.

3. The District Court referred to defendant David J. Goldberg, Commissioner of New Jersey Department of Transportation, as the state defendant and all the remaining defendants as the federal defendants. We will continue to use this terminology.

There were three separate hearings concerning the location of Route I–95. The first of these as above mentioned was on January 12, 1966. The second on May 18, 1966 and the third on September 1, 1966. At the hearing of May 18th appellant requested that the route be put in a corridor to the east in the area of the Pennsylvania Railroad. That suggestion was rejected because that area was already served by U.S. Route 1, the New Jersey Turnpike and U.S. Route 130, which provided 14 lanes of traffic; to add more lanes was soundly thought to be illogical. Also, another corridor had been previously proposed and rejected. The contention that the only corridor considered was the one taken simply does not jibe with the facts. Since these hearings were a matter of record before the State court and this very question was raised in appellant's state court brief there is no justiciable issue at this time relating to it.

The distinction appellant attempts to make between the federal defendants' approval of the road and the State's recommendation of it is without merit. It is the function of the State to initiate the proposal of the route alignment, the Federal Transportation Secretary merely approves or rejects a proposal. The objective of this litigation and the previous complaint, instituted in the New Jersey courts, is to deviate I–95 from its set course. To reverse the judgment of the New Jersey court because the appellant has included a new adversary in no way establishes of itself any new right in this appellant, " * * * it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries." Bernhard v. Bank of America National Trust & Savings Association, 19 Cal.2d 807, 122 P.2d 892, 894 (1942). As Justice Schettino stated "Generally the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular

litigant." See McAndrew v. Mularchuk, 38 N.J. 156, 183 A.2d 74 (1962).

Appellant argues that it is unfair to adopt the theory of collateral estoppel since the judgment does not factually operate upon any other party; the argument is that in effect there is no mutuality of estoppel. Under the circumstances before us it would be unjust to permit the appellant, who has already had its full day in court, to rehash this claim by merely adding new parties. No necessity has been shown for mutuality of estoppel on this appeal. In Bruszewski v. United States, Judge Hastie, speaking for the court said, "Thus, no unfairness results here from estoppel which is not mutual. In reality the argument of appellant is merely that the application of res judicata in this case makes the law asymmetrical. But the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata." See Bruszewski v. United States, 181 F.2d 419, 421 (3 Cir. 1950).

The Township of Hopewell urges that the doctrine of collateral estoppel should not be applied since multiple factual changes have occurred along the proposed route of I–95 within Hopewell Township which preclude its utility in its present location whether viewed as a corridor or a route. The entire length of the road in dispute will be approximately 32 miles. It is natural to assume that in the course of its planning and development certain changes would ensue. However, those changes are minor. They do not warrant reversal of the lower court's decision.

It is further urged by appellant that there have been changes in the law which would disallow collateral estoppel in this instance. In August of 1968, Congress amended Section 128(a) of the Federal-Aid Highway Act to specifically require any state highway department to certify not only that it has considered "the economic effects" of a location, but also that it has considered "social ef-

fects of such a location, its impact on the environment and its consistency with the goals and objectives of such urban planning as has been promulgated by the community." (Pub.Law 90–495 § 24, 82 Stat. 828, Aug. 23, 1968.)

It must be remembered that the location recommendation of the State was sent on June 1, 1967, that portions of the route through Hopewell Township were approved on January 26, 1968. That approval was approximately seven months before the law was amended and appellant is asking us to apply the amendment retroactively. To do this would be inconsistent with the purpose of the act which reads, "It is hereby declared that the prompt and early completion of the National System of Interstate and Defense Highways, so named because of its importance to the national defense and hereafter referred to as the 'Interstate System,' is essential to the national interest and is one of the most important objectives." (23 U.S.C. § 101(b)). If we were to apply Section 128(a) as amended we certainly would not be implementing "prompt completion" of the system, in fact it would be detrimental to the objective of an early completion. Had Congress intended that the amendment had a retroactive effect, that purpose of course would have been clearly shown in the amendment itself. There is no language in the 1968 amendment which could in any way be twisted to indicate that it is to function retroactively. Nor did the court in Triangle Improvement Council v. Ritchie, the key decision on this particular query, have the slightest doubt that the 1968 amendment should not be applied retroactively. Chief Judge Field stated "I am further convinced, after analyzing the statutory provisions, their legislative history, and the instructional memoranda issued pursuant thereto, that Congress could not have intended that projects authorized and approved several years prior to the enactment of the 1968 statute were to be subject to inflexible and strict compliance therewith. The

administrative agency did not give it such an interpretation, and I am of the opinion that the agency's determination had a rational basis and should not be disturbed. Triangle Improvement Council v. Ritchie, 314 F.Supp. 20, 30 (S.D. W.Va.1969), affirmed on opinion below, 429 F.2d 423 (4 Cir. 1970), certiorari dismissed as improvidently granted 402 U.S. 497, 91 S.Ct. 1650, 29 L.Ed.2d 61.

Appellant further suggests that collateral estoppel cannot control in this instance since the hearing requirements as set forth in Policy and Procedure Memorandum 20–8 issued by the Bureau of Public Roads were not followed.[4] In particular appellants assert that there were no hearings under paragraph 6(a) of that memorandum which says that "Both a corridor public hearing and a design public hearing must be held." That Policy and Procedure Memorandum goes on to note in paragraph 6(d) concerning projects which have already held a hearing that the following rule applies "If location approval is requested within 3 years after the date of the hearing or an opportunity for a hearing, compliance with the corridor hearing is not required." See P P M 20–8 paragraph 6(d) (1) (b).

In this matter the public hearing was held on May 18, 1966 and on September 1, 1969 there was a subsequent meeting. The request for alignment approval of I–95 was sent by the New Jersey State Highway Engineer on June 1, 1967. On January 26, 1968 approximately one year before the issuance of the Policy and Procedure Memorandum the route alignment from Scotch Road to Route 514 was approved. The remainder of the recommended alignment was approved later. The entire alignment through the Township of Hopewell was approved on January 26, 1968 within the time allowed by the Memorandum. The fact that the alignment was approved in two parts in no way affected appellant. Since the route alignment recommended by the state was ultimately approved by

4. This Memorandum is reprinted as Appendix A to 23 C.F.R. Part 1.

the Bureau of Public Roads, the contentions advanced by appellant concerning so called partial approval are moot.

Finally, appellant would have it that the action of the Federal Highway Administration was arbitrary and capricious in the absence of findings and analysis in support of its approval. A claim quite similar to this was raised in the New Jersey Superior Court which said in its opinion, " * * * appellants argue that the administrative action was arbitrary and capricious because it failed to suggest what evidence was acted upon, what evidence was accepted, and what consideration, if any, was given to planning, economic conservation, or sociologic or other factors. In short, it is contended that a reasoned judgment could not have been made because no basis for it was established." Township of Hopewell et al. v. Goldberg et al., 101 N. J.Super. 589, 597, 245 A.2d 67, 72 (1968). The court rejected that argument and concluded that "there is substantial credible evidence present in the record to support the proposed alignment recommended to the Federal Bureau of Public Roads." Id. at 598, 245 A.2d at 72.

■ Appellant would now require that federal defendants support their approval of a state highway department's decision concerning road alignment by findings and analyses. There is no requirement in the statute that this approval be in writing. The statute states "The Federal-aid primary system shall consist of an adequate system of connected main highways selected or designed by each State through its State highway department, subject to the approval of the Secretary. * * *" 23 U.S.C. § 103(b). Nor is there anything in this law which directs that the Secretary must support his approval by "findings" and "analyses." Therefore since the Congress elected to omit that sort of requirement we certainly could not impose it. The Supreme Court of the United States in Citizens, etc. v. Volpe, 401 U.S. 402, 417, 91 S.Ct. 814, 28 L.Ed.

2d 136 (1971) on the identical issue asserted by Hopewell decided that "Neither the Department of Transportation Act nor the Federal-Aid Highway Act requires such formal findings." There is nothing in the decision of the New Jersey Superior Court or in the record below to support the charge that the approval of the road alignment and the corridor were arbitrary or capricious.

The judgment of the District Court will be affirmed.