**HOPEWELL TOWNSHIP CITIZENS I-95 COMMITTEE et al., Appellants,**

v.

**John A. VOLPE, as Secretary of the United States Department of Transportation, et al., Appellees.**

**No. 72-1941.**

United States Court of Appeals, Third Circuit.

Argued June 7, 1973.

Decided July 2, 1973.

---

Richard L. Rudin, Dept. of Transp., Trenton, N. J., Herbert J. Stern, U. S. Atty., Carl R. Woodward, III, Asst. U. S. Atty., Newark, N. J., George F. Kugler, Atty. Gen., Richard L. Rudin, and Daly D. E. Temchine, Deputy Attys. Gen., for appellees.

Before SEITZ, Chief Judge, and STALEY and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from an order of the United States District Court for the District of New Jersey denying plaintiffs' application for a preliminary injunction and granting defendants' motion for summary judgment.

Plaintiffs are the Hopewell Township Citizens I-95 Committee ("Committee") and Lewis Terpening, Keith Robertson, Martin Katz and Win Straube, individually. They filed this action to enjoin the federal and state defendants from proceeding with the construction of a section of Interstate Highway 95 ("I-95") in Hopewell Township, New Jersey. This section is approximately 3.4 miles in length and, if built as presently planned, will connect the existing westerly terminus of I-95 at Scotch Road in Hopewell Township with Interstate Route 295 in the vicinity of Federal City Road in Lawrence Township to the east. The validity of the New Jersey Department of Transportation's recommendation regarding the location of this segment of I-95 and the federal approval thereof has already been challenged unsuccessfully in two different lawsuits brought by the Township of Hopewell. Township of Hopewell v. Goldberg, 101 N.J.Super. 589, 245 A.2d 67 (App.Div. 1968), certif. denied, 52 N.J. 500, 246 A.2d 457 (1966), and Township of Hopewell v. Volpe, Civil No. 1390–68 (D.N.J. December 12, 1969), aff'd. 446 F.2d 167 (3d Cir. 1971). Location approval is not involved in this appeal.

In granting defendants' motion for summary judgment, the district court characterized the instant action as "old

Levy, Levy, Albert & Marcus, Trenton, N. J., David Sive, James A. Burke, Winer, Neuburger & Sive, New York City, for appellants.

hat" and concluded that there was no genuine issue of material fact and that the defendants should prevail as a matter of law. In addition, without using the formal legal terms, the court also seemed to rest its decision on the alternative ground that plaintiffs' claims were barred by the doctrines of *res judicata* and collateral estoppel. Plaintiffs challenge both of these rulings, and their central argument is that the state defendants failed to hold a design public hearing on the 3.4 mile section of I-95 in dispute here prior to federal approval of and participation in the project. We reverse the summary judgment because we find that there exists a genuine fact issue as to whether or not federal design approval or its equivalent was completed before the requirement for a public design hearing became effective. We also find that *res judicata* and collateral estoppel do not apply in this case because we believe that the issue of a design public hearing was not adjudicated and could not reasonably have been adjudicated in the previous litigation.

■ On August 23, 1968, Congress amended § 128(a) of the Federal Aid-Highway Act ("FAHA") to specifically require any state highway department to certify not only that it has considered the economic effects of a location, but also that it has considered "social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community." 23 U.S.C. § 128(a) (Supp. V, 1970). The Department of Transportation has construed § 128(a) of the FAHA in Policy and Procedure Memorandum 20-8 ("PPM 20-8"), 23 C.F.R., Part I, App. A (1972), which became effective on January 29, 1969. PPM 20-8 deals with what a state highway department must do before submitting location and design proposals to the Federal Highway Administration ("FHWA") for approval.[1] It provides for two hearings, a corridor public hearing and a highway design public hearing,[2] and paragraph 4 (b) defines a highway design public hearing as one that:

"(1) Is held after the route location has been approved, but before the State highway department is committed to a specific design proposal;

"(2) Is held to ensure that an opportunity is afforded for effective participation by interested persons in the process of determining the specific location and major design features of a Federal-aid highway; and

"(3) Provides a public forum that affords a full opportunity for present-

1. "1. PURPOSE

"a. The purpose of this PPM is to ensure, to the maximum extent practicable, that highway locations and designs reflect and are consistent with Federal, State and local goals and objectives. The rules, policies, and procedures established by this PPM are intended to afford full opportunity for effective public participation in the consideration of highway location and design proposals by highway departments before submission to the Federal Highway Administration for approval. They provide a medium for free and open discussion and are designed to encourage early and amicable resolution of controversial issues that may arise.

"b. The PPM requires State highway departments to consider fully a wide range of factors in determining highway locations and highway designs. It provides for extensive coordination of pro-

posals with public and private interests. In addition, it provides for a two-hearing procedure designed to give all interested persons an opportunity to become fully acquainted with highway proposals of concern to them and to express their views at those stages of a proposal's development when the flexibility to respond to these views still exists."

2. "6. HEARING REQUIREMENTS

"a. Both a corridor public hearing and a design public hearing must be held, or an opportunity afforded for those hearings, with respect to each Federal-aid highway project that:

"(1) Is on a new location; or

"(2) Would have a substantially different social, economic or environmental effect; or

"(3) Would essentially change the layout or function of connecting roads or streets."

ing views on major highway design features, including the social, economic, environmental, and other effects of alternate designs."

Consequently, under § 128(a) of the FAHA and PPM 20-8, a design public hearing must precede federal design approval of Federal-aid highway projects like I-95.

In Concerned Citizens of Marlboro v. Volpe, 459 F.2d 332, 335 (3d Cir. 1972), and Wildlife Preserves, Inc. v. Volpe, 443 F.2d 1273, 1274, (3d Cir. 1971), this court determined that § 128 (a) of the FAHA and PPM 20-8 do not apply retroactively to projects which received federal design approval or its equivalent prior to the passage of either provision. Therefore, the basic problem confronting the district court in this case was whether or not the FHWA had approved the design for the section of I-95 between Scotch Road and I-295 before August 23, 1968, the effective date of § 128(a) of the FAHA. If such approval had been given by this date, no further hearings would be necessary. If it had not been given by then, the statutory and regulatory scheme described above would apply.

In resolving this critical question, the district court had before it a number of items of evidence including two affidavits which on their face appear contradictory. One of these affidavits was taken from Robert I. Kellum, the Division En-

gineer for the FHWA in New Jersey. According to paragraph 6(i) of this affidavit: [3]

"(i) On August 2, 1968, FHWA approved the design for the section of I-95 between Scotch Road and I-295 (Exhibit 13)."

The second affidavit with which we are concerned was given in 1969 by Edgar H. Swick, the then Deputy Director of the Bureau of Public Roads, an agency of the United States Department of Transportation. This affidavit was used by the federal government in Township of Hopewell v. Volpe, supra, but it was introduced as plaintiffs' Exhibit 6 in the present case. In paragraph 7 of that affidavit, in an apparent reference to part of proposed I-95 including the segment of road in dispute here, Mr. Swick stated:

"7. The approval of the location is not authorization for the state to initiate purchase of right-of-way for or to start construction for the route. Pursuant to BPR Policy and Procedure Memorandum 20-8, paragraph 10, design approval must be obtained (34 Fed.Reg. 727 (1969)). Among the steps that must be completed before design approval can be given is a public hearing on the design of the project."

After quoting all of paragraph 6 of the Kellum affidavit, the district court found as a fact that "all the approval requisite by law was completed by Au-

3. Paragraphs 6(j), 6(k) and 6(l) read as follows:

"(j) On October 16, 1970, FHWA concurred in the Department's determination as discussed in their letter of September 29, 1970 that a design public hearing would not be required for this section of I-95 (Exhibits 14 and 15).

"(k) On March 10, 1972, FHWA approved the Stage 2 program for the construction of I-95 from Scotch Road to I-295 under Project I-IG-95-5(16) 3 (Exhibit 16) and thereby an additional $9,720,000 in Federal funds were committed.

"(l) On June 19, 1972, FHWA concurred with the State's determination of June 5, 1972 that our plan approval action of August 2, 1968, constituted de-

sign approval (Exhibit 17) within the meaning of Policy and Procedure Memorandum (PPM) 90-1, dated August 24, 1971 (Exhibit 18). Paragraph 5e(1) of PPM 90-1 provides that design approval was that action or series of actions set out in paragraph 10 of PPM 20-8 dated January 14, 1969 (Exhibit 19). Paragraph 5e(1) also provides that the FHWA's concurrence in the Department's citation of documents, which it believes are equivalent to design approval, will serve as verification that design approval has in fact been given. Thus, design approval was in fact granted on August 2, 1968, which preceded by seventeen months the effective date of the National Environmental Policy Act of 1969."

gust of 1968." It then determined that the defendants should prevail as a matter of law, whereupon it granted their motion for summary judgment. The Swick affidavit was not mentioned in the court's opinion.

It is well settled in the federal courts that a district court cannot grant summary judgment under F.R.Civ.P. 56(c) if there is a genuine issue presented as to the existence of any material fact. First Pa. B. & T. Co. v. United States Life Ins. Co., 421 F.2d 959 (3d Cir. 1969); Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc., 365 F.2d 742 (3d Cir. 1966); Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114, 17 A.L.R.3d 998 (3d Cir. 1966). In addition, it is clear that all doubts as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. Sarnoff v. Ciaglia, 165 F.2d 167 (3d Cir. 1947).

█ A key fact in this case, as we have previously indicated, is whether the proposed segment of I-95 between Scotch Road and I-295 received federal design approval or its equivalent prior to August 23, 1968. Since the Kellum and Swick affidavits appear to conflict on this important point, and since any doubts must be resolved in favor of the plaintiffs, we conclude that the district court improperly granted defendants' motion for summary judgment. It may turn out that Kellum is right and Swick is wrong, or that the affidavits can in some way be reconciled, but this cannot be done in the context of summary judgment.

█ With respect to the district court's second ground of decision, res judicata and collateral estoppel, we do not believe that this case is "old hat" or "the same old ballgame." Res judicata and collateral estoppel represent rules

designed to prevent needless relitigation over rights and liabilities which have been previously determined. See Commissioner v. Sunnen, 333 U.S. 591, 68 S. Ct. 715, 92 L.Ed. 898 (1948), which defines these doctrines as follows:

"The general rule of res judicata applies to repetitious suits involving the same cause of action . . . . The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose' . . . ."

"But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding was rendered' . . . In this sense, res judicata is usually . . . referred to . . . as collateral estoppel." 333 U.S. at 597–598, 68 S.Ct. at 719.

In order to understand why res judicata and collateral estoppel do not bar the present action, it is necessary to examine the two earlier cases involving Hopewell Township.[4] In Township of Hopewell v. Goldberg, supra, the Appellate Division of the Superior Court of New Jersey held that New Jersey had not acted arbitrarily or capriciously in choosing the route alignment of I-95 between Scotch Road and I-295 and it also found that the federal requirements had been met with respect to it. Since this

---

4. Commissioner v. Sunnen, supra, indicates that not only named parties but also their privies are bound by final judgments. Since we find that res judicata and collateral estoppel do not operate as a bar to the claims in this case, it is unnecessary for us to reach the question of whether the I-95 Committee and the individual private plaintiffs would be privies of Hopewell Township.

case was argued June 24, 1968 and decided July 10, 1968, and since the specific concept of "design public hearing" did not come into existence until August 23, 1968, the requirement of a design public hearing prior to federal design approval was not a matter which could have been litigated in that forum.

After failing to gain relief in state court, Hopewell Township filed a similar lawsuit in the United States District Court in New Jersey. Township of Hopewell v. Volpe, *supra*. The case was heard before Judge Whipple who granted summary judgment in favor of the defendants and dismissed the complaint on the theory that the Township was barred by *res judicata* from again litigating the issue of route alignment against New Jersey and by collateral estoppel from litigating it against the federal government. We affirmed in an opinion by Judge McLaughlin which was relied upon by the district court in the present case in finding that "this subject has been litigated heretofore" and that "the issues have been litigated." The question of a public hearing was not raised in Township of Hopewell v. Volpe, however, and apparently it could not have been since, according to Judge Whipple, the federal government's position was that a public design hearing would be held in the future:

> "The federal defendants argue, further, that the case will be ripe for adjudication, as to it, only after federal funds can be committed, *prior to which a hearing must be had and design approval granted.* But the Township contests, not the future design, but the state recommendation and federal approval of the route alignment of I-95. *For the Township to have waited until after the design approval had been granted and the right-of-way purchases had been initiated would, in my opinion, have exposed it to the defendants successfully pleading laches.*" (emphasis added).

From the above, then, it is obvious that at least much of the subject matter of the present lawsuit has not been and could not have been argued in the previous actions instituted by Hopewell Township. Consequently, it was reversible error for the district court to decide this case against the plaintiffs on the basis of *res judicata* and collateral estoppel.

The judgment of the district court granting the defendants' motion for summary judgment will be reversed. We do not disturb the district court's denial of a preliminary injunction; however, we remand this case to the district court and order that it hold an expedited final hearing on plaintiffs' motion for a declaratory judgment and a permanent injunction.