HOPEWELL TOWNSHIP CITIZENS I-95 COMMITTEE et al., Plaintiffs,

v.

John A. VOLPE, as Secretary of the United States Department of Transportation, et al., Defendants.

Civ. A. No. 1500-72.

United States District Court, D. New Jersey.

Dec. 18, 1973.

Levy, Levy, Albert & Marcus, by Philip J. Albert, Trenton, N. J., and Winer, Newburger & Sive, by David Sive, New York City, for plaintiffs.

Herbert J. Stern, U. S. Atty., by Carl R. Woodward, III, Asst. U. S. Atty., for John A. Volpe, Ralph B. Bartelsmeyer, and Robert I. Kellum.

George F. Kugler Jr., Atty. Gen. of N. J., by Richard L. Rudin, Deputy Atty. Gen., for John C. Kohl.

## OPINION AND ORDER

CLARKSON S. FISHER, District Judge.

In this action, plaintiffs seek a declaratory judgment and a permanent injunction halting construction of a 3.4 mile segment of Interstate Highway 95 (I–95) near Hopewell, New Jersey.

Originally, this Court denied a preliminary injunction and granted a motion for summary judgment brought by the defendants. An appeal to the Third Circuit Court of Appeals ensued and that Court reversed the grant of a summary judgment only and remanded the case for a full hearing. Hopewell Township Citizens I–95 Committee v. Volpe, 482 F.2d 376 (3d Cir. 1973). A full and complete hearing followed and the proofs in their totality brings this court to the same conclusion as it reached in the first instance.

This highway segment concerned will eventually connect the existing westerly terminus of Route 95 at Scotch Road in Hopewell Township with Interstate Route I–295 in the vicinity of Federal City Road in Lawrence Township.

On the remand, I conceive my task is to resolve the fact issue perceived by the Court of Appeals as to "whether or not federal design approval . . . was completed before the requirement for a public design hearing became effective". 482 F.2d at 378. I take this to mean that this fact issue problem was generated by what seems to be conflicting statements in the affidavits of Robert I. Kellum, the Division Engineer for the Federal Highway Administration (FHWA) in New Jersey and Edgar H. Swick, then Deputy Director of the Bureau of Public Roads, an agency of the United States Department of Transpor-

tation. The Swick affidavit dated April 29, 1969, which caused the Court of Appeals so much concern, was not prepared for use in the instant litigation but was used in the case of Township of Hopewell v. Volpe, Civil No. 1390–68 (D.N.J. Dec. 12, 1969), aff'd, 446 F.2d 167 (3d Cir. 1971). Location approval was confirmed in that case and in Township of Hopewell v. Goldberg, 101 N.J. Super 589, 245 A.2d 67 (1968), cert. denied, 52 N.J. 500, 246 A.2d 457 (1968).

In the hearing on remand both Kellum and Swick testified, and all doubts as to the factual situation were dispelled. In the position Mr. Swick occupied at the critical time in which we are here interested, he had extensive and widespread responsibilities supervising the F.H.W.A. program for every state in the Union. The affidavit involved here was prepared by the Chief Counsel's office on material furnished to it, then checked for accuracy, then further checked by him as to the accuracy of what he knew personally, and executed. At the time he signed it, he had reference to the segment of I–95 between Scotch Road and I–287 in Piscataway Township. He was generally aware of the location of I–95 between the Delaware River and I–287, but he did not have any specific knowledge regarding its relation to Route 129 except that the two routes would have to be coordinated; nor did he know that funding for right-of-way acquisition and utility relocation on Route 129 had been federally approved. Further, he knew of no controversy involving the location of Route 129.

Additionally, Swick had no further contact with the matter following the execution of the affidavit. He learned only a day or so before he testified in this matter that there had existed a design approval for this segment of the highway. Upon learning this, he reviewed both the August 2, 1968 letter (P–13) and his affidavit and concluded that the August 2, 1968 letter indeed constituted design approval of the segment between Scotch Road and I–95. This conclusion he based upon a review

in the letter of the elements that constituted design approval, such as 200 scale plans and proposed profiles.

It is to be borne in mind that the term "design approval" did not exist until the promulgation of PPM 20–8 on January 14, 1969. In view of the foregoing, it is obvious that Swick and Kellum are in agreement that the equivalent of design approval had been complied with in 1968. As the Court of Appeals has pointed out in this case, if such approval had been given by August 23, 1968, no further hearings relative to design approval would be required, and cited Concerned Citizens of Marlboro v. Volpe, 459 F.2d 332 (3d Cir. 1972), and Wildlife Preserves, Inc. v. Volpe, 443 F.2d 1273 (3d Cir. 1971). In the latter case it was held that Section 128(a) of the Federal Aid Highway Act and PPM 20–8 did not apply retroactively to projects which had received Federal design approval or its equivalent prior to their promulgation.

To this court the evidence clearly indicates that the documents involved, including 200 scale plans, submitted by the state on May 21, 1968 and approved by F.H.W.A. on August 2, 1968, considered the following elements: "A preliminary set of plans, major stream crossings, land requirements, numbers of lanes, interchanges, overpasses, underpasses, railroad separations and proposed profiles". These elements are those considered by the F.H.W.A. when determining whether to approve the design of a highway. Comparison of the documents submitted (G–1, G–2, G–3) in 1968 with the map, GS–1, and the construction plans, G–14a, G–14b, demonstrates that there has been no significant change in the design of the segment since August 2, 1968.

Plaintiffs here are concerned that the construction of this segment will in some way influence the proposed northward extension from the I–295 connection through Hopewell Township itself. This segment, however, while shifting the connecting ramps between I–95 and I–295 in a northerly direction toward its easterly end and thus departing from the alignment of proposed Route 129, returns to the original alignment as it approaches Federal City Road. They are also concerned with the construction of four culverts which were installed and would assist in controlling water problems in the construction northerly to Hopewell Township if that route is ever approved. These are only minor changes and do not indicate any unreasonable action on the part of defendants, but rather, a concern for the taxpayers' money should the northward extension to Hopewell Township ever be constructed. It is to be noted that that section of highway would require design approval before it can be undertaken.

The testimony revealed that at the time of the hearing in excess of forty percent of the segment had been completed. Therefore, the equities clearly favor the defendants considering the granting or the denial of an injunction. The individual plaintiffs all reside at least three miles from the construction site, and although living in the general vicinity of the proposed northern extension of I–95 between I–295 and I–287, the completion of this segment will not coerce that proposed extension if, as has been pointed out, it is ever completed. In fact, this court got the distinct impression during the hearing that the proposed northerly extension through Hopewell Township is their main concern, even in this action.

Accordingly, the application for a permanent injunction is denied.

The above shall constitute the court's findings of fact and conclusions of law under F.R.Civ.P. 52(a).