1212

CITIZENS TO PRESERVE OVERTON
PARK, INC., et al., Plaintiff-
Appellant,

v.

Claude S. BRINEGAR, Secretary, United
States Department of Transportation,
Defendant-Appellant,
and
Charles W. Speight, Commissioner, Ten-
nessee Department of Highways,
Defendant-Appellee.

Nos. 73–1668, 73–1669.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 30, 1974.

Decided April 3, 1974.

John W. Vardaman, Jr., Washington,
D. C., for plaintiffs-appellants; Wil-
liams, Connolly & Califano, Washington,

D. C., Charles F. Newman, Burch, Porter & Johnson, Memphis, Tenn., on brief.

Judith S. Feigin, Dept. of Justice, for Federal appellant; Irving Jaffe, Acting Asst. Atty. Gen., Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., on brief.

J. Alan Hanover, Sp. Counsel, Memphis, Tenn., for defendant-appellee; David M. Pack, Atty. Gen., of Tenn., Hanover, Walsh, Barnes & Jalenak, Memphis, Tenn., on brief.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

This litigation began in 1969, when Secretary of Transportation, John A. Volpe, approved a 3.7 mile extension of Interstate Highway 40 through Memphis, Tennessee. Four thousand feet of this project was to cut through Overton Park, a public wooded area in downtown Memphis. Citizens to Preserve Overton Park, Inc., organized to oppose the Secretary's action. They challenged his approval as contrary to § 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f). Section 4(f) states that "the Secretary [of Transportation] shall not approve any program or project which requires the use of any publicly owned land from a public park", among other areas,

> "unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park . . . resulting from such use."

The District Court granted summary judgment for defendants, 309 F.Supp. 1189 (W.D.Tenn.1970). This decision was affirmed by this court with one judge dissenting. 432 F.2d 1307 (6th Cir. 1970). The Supreme Court reversed, holding that the District Court must review the full administrative record before the Secretary at the time of his decision in order to determine whether the Secretary "could have reasonably believed that in this case there are no feasible alternatives or that alternatives do involve unique problems" and whether the Secretary's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." 401 U.S. 402, 415–416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

On remand, 335 F.Supp. 873, the District Court, having conducted a full hearing and having probed the prior administrative proceedings, concluded that the Secretary had made a proper decision as to the design of the proposed route and had only to determine whether the Overton Park route was the sole feasible and prudent route. Thus, the Court remanded the case to the Secretary "only for the purpose of making a route determination in compliance with § 4(f) of the Department of Transportation Act of 1966 as that provision has been construed by the Supreme Court". The Court enjoined both the federal and state defendants from engaging in activities which would advance construction of the Overton Park route.

Secretary Volpe ordered a full review of the decision thereafter. Because of legislation passed and regulations issued after his initial approval of the route, the Secretary ordered the preparation of an environmental impact statement in accordance with § 102(C) of the National Environmental Policy Act of 1969, and the holding of a public hearing in compliance with § 5(b) of Policy and Procedure Memorandum 20–8, promulgated under the 1970 Federal-Aid Highway Act. After a searching administrative review of the matter, Secretary Volpe refused to approve the Overton Park route on January 18, 1973. He stated that the National Environmental Policy Act, the Federal-Aid Highway Act, and the noise standards set by the Federal Highway Administration, as well as the Supreme Court's interpretation of § 4(f), had weighed in his reconsideration of the matter:

> "On the basis of the record before me and in light of guidance provided by

the Supreme Court, I find that an Interstate highway as proposed by the State through Overton Park cannot be approved. On that record I cannot find, as the Statute requires, and as interpreted by the courts, that there are no prudent and feasible alternatives to the use of parkland nor that the broader environmental protection objectives of the NEPA, and the Federal-Aid Highway Act have been met, nor that the existing proposal would comply with FHWA standards on noise."

The Secretary noted "possible alternatives which the State of Tennessee may wish to consider," without endorsing a particular one or rejecting the "no build" alternative.

Commissioner Charles W. Speight, of the Tennessee Department of Highways (hereafter the State), responded to this rejection on February 1, 1973, by petitioning the District Court for an order requiring the Secretary "to comply with terms of remand order or, in the alternative, to dissolve injunction as to state defendant." The State argued that the Secretary had not made a "route determination" as required by the Court's original remand order. The State also argued that the Secretary had gone beyond the terms of the remand order in reconsidering the highway's design and that the Secretary had failed to discharge his 49 U.S.C. § 1653(f) obligation to make a route determination. The crux of the State's objection was that it was entitled either to proper approval of the Overton Park route or to a formal statement of what other route is prudent and feasible, along with specific findings of any other legal shortcomings of the Overton Park route. The State's fear was that the Secretary's rejection of the Overton Park route left it with no obvious direction—with no alternative proposal guaranteed of federal funding.

On May 1, 1973, the District Court granted the relief requested by the State. The Court found that the Secre-

tary had not made the route determination required by his January 5, 1972 remand order. He therefore ordered the new Secretary of Transportation, Claude S. Brinegar, to perform several acts. First, the Secretary must either find unequivocally that there is no feasible and prudent alternative to the use of Overton Park land for interstate 40 (thus amounting to approval of that route), or state that there is at least one feasible and prudent alternative route and specify it, so that the court can review the correctness of that decision. Second, the Secretary must find and state for the record, if true, that the Overton Park route would violate the National Environmental Policy Act of 1969, and 1970 Federal-Aid Highway Act, or the noise standards of the Federal Highway Administration, and at least designate the respects in which such provisions would be violated by the construction of this project. Third, the Secretary need not reconsider approval of the Overton Park route (the putative rejection of January 18, 1973, having been found unlawful), but he may reconsider the design decision (a separate decision from the question of approving the park route in any form). Fourth, the Secretary must bear the burden of obtaining any additional information, as the District Court discharged the State of Tennessee from any further responsibility to produce information for the Department of Transportation. Finally, the Secretary must do all these things within 45 days.

In separate appeals, consolidated for review by this court, Citizens to Preserve Overton Park and the Secretary of Transportation attack the District Court's decision. The Secretary argues that the District Court's interpretation of § 4(f) is "wholly foreign to the statutory scheme Congress has enacted to govern the use of federal funds in highway construction." Whereas the District Court held, and the State urges, that § 4(f) requires a formal statement of findings and reasons from the Secretary for rejecting the Overton Park

route, the Secretary claims that under § 4(f) he is merely foreclosed from approving a proposal which would take parklands so long as he is not convinced that there is no prudent and feasible alternative to the use of such lands. The Secretary contends that upon such rejection, § 4(f) does not require anything more of him and that he need not affirmatively find that a particular feasible and prudent alternative exits. These differing interpretations of § 4(f) embody quite different conclusions as to what the Secretary must do to reject a state proposal for federal highway construction funds.

■ Our resolution of these conflicting statutory interpretations first requires a determination of the Secretary's scope of authority in considering proposals before him. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415–416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). We find that the Secretary properly construed his authority. It is clear to us that the statute is designed to require the Secretary to scrutinize proposed highways for the protection of park lands, and places no affirmative duty on the Secretary to specify any particular route as a feasible and prudent alternative to the proposed route.[1]

■ The State's main contention is that the Secretary's decision is procedurally inadequate because his failure to specify an alternate route prohibits adequate judicial review of his decision. We do not agree. As noted in the *Overton Park* case by the Supreme Court, formal findings are not required by either the Department of Transportation Act or

the Federal-Aid Highway Act. 401 U.S. at 417, 91 S.Ct. 814. Here, the Secretary made suggestions as to possible alternative routes. A specific finding as to a particular route is not required. Thus, the Secretary's explanation of his action is not so vague as to frustrate judicial review. The validity of the Secretary's action must stand or fall on the propriety of that finding judged by the appropriate standard of review. See Camp v. Pitts, 411 U.S. 138, 142–143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

The burden of choosing the route does not, as the District Court held, lie with the Secretary. The Secretary only approves or disapproves a particular route. Township of Hopewell v. Volpe, 446 F.2d 167, 171 (3d Cir. 1971). The Federal-Aid Highway Act, 23 U.S.C. § 101 et seq., prescribes the procedure to be followed in obtaining federal funds. 23 U.S.C. § 103(e) provides that

> "The routes of [the Interstate] system  *  *  *  shall be selected by joint action of the State highway departments of each State and the adjoining States, subject to the approval by the Secretary.  *  *  * "

The first step in initiating a request for federal funds is provided in § 105(a):

> "As soon as practicable after the apportionments for the Federal-Aid systems have been made for any fiscal year, the State highway department of any State desiring to avail itself of the benefits of this chapter shall submit to the Secretary for his approval a program or programs of proposed projects for the utilization of the funds apportioned."

---

1. The statute is drafted in a negative manner and prohibits the Secretary from approving a proposed route unless he finds that no feasible and prudent alternative exists. Had Congress intended that the Secretary specify an alternate route it would have been an easy matter to insert a requirement in the statute. However, the statutory requirements are minimal. In addition to the clear language of the statute, the legislative history of the Act reveals the primary purpose

of the statute to be the protection of vital park lands, parks, historic sites and similar areas. U.S.Code Congressional and Administrative News, pp. 3482, 3499–3500, 90th Congress, 2d Session (1968). The language of 23 U.S.C. § 138 (Federal-Aid Highway Act of 1968) was amended to have the identical language as 49 U.S.C. § 1653(f). U.S. Code Congressional and Administrative News, pp. 3482, 3538–39, 90th Congress, 2d Session (1968).

Following approval of the project plans are to be submitted to the Secretary:

"* * * the State highway department shall submit to the Secretary for his approval, as soon as practicable after program approval, such surveys, plans, specifications, and estimates for each proposed project included in an approved program as the Secretary may require." 23 U.S.C. § 106(a).

 Thus, it is incumbent on the state to come forward with a particular route. Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323, 1328 (4th Cir. 1972), cert. denied, 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261; Lathan v. Volpe, 455 F.2d 1111, 1115 (9th Cir. 1971); Township of Hopewell v. Volpe, 446 F.2d 167, 171 (3rd Cir. 1971). If one route is disapproved, the burden is on the state to submit another proposal to the Secretary and at that time the Secretary would be required either to approve or disapprove the new proposal.

We hold that the Secretary has at this point complied with his duties under the statute. The order of the District Court remanding the case to the Secretary is therefore reversed.